566 A.2d 1256

**In re ADOPTION OF T.M., S.M., S.M., B.M., S.M.**

**Appeal of A.M.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1989.

Decided Nov. 30, 1989.

304

Robert A. DeLuca, Media, for appellant.

James E. Delbello, Media, for appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

TAMILIA, Judge.

This is an appeal from an Order denying appellant's exceptions to the involuntary termination of her parental rights.[1] The appellant originally lost custody of her five minor children when the Court of Common Pleas of Delaware County adjudicated them dependent on March 25, 1986, and placed them in foster care, following the court's determination the children were without proper care and control. At that time, appellee Children and Youth Services of Delaware County (hereinafter "CYS") was awarded legal custody of the children. On February 17, 1987, appellant was arrested for the fourth time on charges of retail theft, and delivered to Delaware County Prison, where she remained until September 28, 1987, when she was transferred to Keenan House, an Allentown, Pennsylvania, drug rehabilitation facility. CYS filed a petition for involuntary ter-

1. Appellant is the natural mother of her five children, all of whom were born out of wedlock—S.M. and S.M. (twins) born 6/11/84, T.M. born 12/24/78, S.M. born 11/8/82, and B.M. born 8/9/85. The parental rights of all of the putative natural fathers have been terminated already by the Court of Common Pleas of Delaware County.

mination of appellant's parental rights on May 24, 1988, and a hearing in the matter was held before the Honorable Francis J. Catania on September 1, 1988. Between the time of her transfer from Delaware County Prison and the date of the termination hearing, appellant resided continuously at Keenan House. On September 6, 1988, the court entered an Order and Decree terminating appellant's parental rights. Appellant's exceptions to the Order, filed September 22, 1988, were denied by the court on December 2, 1988, and this appeal followed.

On appeal, appellant contends the court erred in terminating her parental rights because the evidence presented did not support a finding appellant evidenced a settled purpose of relinquishing her parental claim to her children, nor did the evidence show that she refused or failed to perform her parental duties.

As this Court has stated in prior cases involving an involuntary termination of parental rights, our scope of review is limited to determining whether the hearing court's Decree is supported by clear and convincing, competent evidence. Absent an abuse of discretion or error of law, the termination Order will stand. *Matter of K.L.P.*, 354 Pa.Super. 241, 511 A.2d 852 (1986).

Applying this narrow standard of review to the instant case, and after a thorough examination of the record, we find the hearing court committed no abuse of discretion or error of law in terminating appellant's parental rights. The Adoption Act, 23 Pa.C.S. § 2511, states in pertinent part:

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to

be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

The record indicates CYS has had custody of each of the children since March 25, 1986. The record further indicates since that time appellant has visited any of her children only once, on June 19, 1986. As the hearing court wrote in its comprehensive and well-reasoned Opinion:

Pursuant to sub-section a(1) of § 2511, the Court must determine that there is a period of at least six months when the parent has evidenced a settled purpose of relinquishing parental claim. It appears quite clear from the record, that from June of 1986 until at least September of 1987, when she entered Keenan House, [appellant] did evidence such a settled purpose. The evidence is not

as clear after September of 1987. In determining whether a parent's absence and/or failure to support a child while incarcerated constitutes abandonment of the child and warrants termination of parental rights, inquiry must be made as to whether the parent has utilized the resources at his or her command while in prison to continue a close relationship with the child and if a parent does not exercise reasonable firmness in declining to yield to obstacles, his parental rights may be forfeited. *McCray Adoption*, 460 Pa. 210, 331 A.2d 652 [1975]. The Court notes that there is a period of abandonment in excess of six months prior to [appellant's] incarceration in February of 1987 and another period, once again in excess of six months, subsequent to her incarceration. The evidence at the hearing was quite clear that there was no attempt at communication during the entire period of time from June of 1986 to September of 1987. On this basis alone, the Court found sufficient evidence to terminate pursuant to § 2511(a)(1).

Slip Op., Catania, J., 4/13/89, pp. 6–7.

Appellant made initial attempts to communicate with her children after she began treatment for her long-term drug addiction. However, a parent's extended periods of disinterest in her children will not be washed away by a minimal renewal of some interest in those children now. *Adoption of Baby Boy A.*, 512 Pa. 517, 517 A.2d 1244 (1986). Nor can we accept appellant's contention her emotional, drug-related problems justified her failure to perform her parental duties, or at least make more of an effort to do so.

Parental duty does not require the impossible, but may encompass that which is difficult and demanding. A parent may not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.

*In re Burns*, 474 Pa. 615, 626, 379 A.2d 535, 541 (1977).

Therefore, we reject appellant's explanation as to why she did not make more efforts related to her parental

obligations to her children, and find the evidence presented clearly and convincingly demonstrates appellant's settled purpose of relinquishing her parental claim to her children, and her refusal or failure to perform her parental duties, pursuant to section 2511(a)(1).

██ Appellant also argues the court erred in finding appellant was incapable and neglectful in performing her parental duties and the said incapacity and neglect could or would not be remedied within a reasonable period of time. As stated above, we find ample evidence of appellant's incapacity and neglect in performing her parental duties. The issue, then, is whether, within the strictures of sections 2511(a)(2) and 2511(a)(5), the presently intolerable situation can be remedied within a reasonable period of time. We do not believe such a resolution can be made by appellant, with or without the assistance of CYS.

Clearly, appellant has a serious drug problem which contributed in no small measure to her criminal activity and parental neglect. While appellant is now in treatment for her addiction and hopeful she will be able to place her life in order, a successful outcome is still problematical. Moreover,

> Once the statutory grounds for involuntary termination of parental rights have been clearly shown, it is the child's welfare that must be considered. See *Adoption of David C.*, [479 Pa. 1,] 387 A.2d [804] 812 [1978]. In considering the interests of these children, the Court sees that they have been involved in placement for most of their young lives.... At some point, these children should be given a chance. They should not have to continue to wait for the mother to progress through various programs to the point where she is ready to *start* to consider parent training.

Slip Op. at 9 (emphasis in original).

Contrary to the assertions of appellant, we find the conclusions of the court are supported by the record and testimony, notwithstanding some testimony appellant could

be a capable parent. While the court considered the testimony favorable to appellant, it found far more persuasive the testimony of both Linda Joseph, appellant's CYS caseworker, and Richard Roeder, a psychologist who interviewed appellant, that the conditions which led to the placement of appellant's children with CYS continue to exist, that appellant has not remedied those conditions sufficient to parent her children and that her parental rights should be terminated.

One final observation, which we find pertinent in consideration of the best interest of the children, concerns whether or not reasonable prospects for placement of the children in adoptive homes exist. While this is not a statutory requirement in termination cases where the issue does not involve one parent attempting to terminate as to another parent, *see In re Male Infant B.E.*, 474 Pa. 139, 377 A.2d 153 (1977), as stated in *In re Burns*, 474 Pa. 615, 379 A.2d 535 (1977),

> An agency bringing a petition for termination of parental rights has as its continuing concern the eventual placement of the child for adoption when it finds a suitable parent or parents. Therefore, when a child is in the custody of an approved adoption agency, it is not necessary that adoption be imminent before the agency may petition to have the parents rights terminated.

*Id.*, 474 Pa. at 627, 379 A.2d at 541, quoting *In re Male Infant B.E., supra*, 474 Pa. at 143, n. 5, 377 A.2d at 155, n. 5.

While this is not an evidentiary requirement, we find it reassuring and the better practice to have as a matter of record, the prospects and activities pursued for the permanent placement of the children. In this case, all the children are in pre-adoptive homes and will be adopted by those families (Record supplement, 10/18/89). In this fashion, we have the necessary assurance the agency is pursuing its responsibility for permanent placement of the children and that they will not remain rootless in temporary placement throughout the years of their minority.

Based on the foregoing analysis, we dismiss appellant's final claim the court erred in failing to give primary consideration to the needs and welfare of her children. Although termination of parental rights should be a last resort for the judicial system, based on appellant's past history, present status and future prospects for proper parenting, such an adjudication is now mandated.

Order affirmed.