533 Pa. 115 (1993)
620 A.2d 481
In re E.M. a/k/a E.W.C. and L.M. a/k/a L.C., Jr., Minors.
Appeal of ELIZABETH M.
Supreme Court of Pennsylvania.
Argued September 24, 1992.
Decided February 17, 1993.
*116 *117 Raymond N. Sanchas, Allegheny County Bar Ass'n, Juvenile Court Project, Pittsburgh, for appellant.
Carla F. Hobson, Allegheny County Law Dept., Pittsburgh, for appellee Allegheny County Children & Youth Services.
Mineko S. Avery, Child Advocacy Legal Aid Soc., Pittsburgh, for appellee minor children.
Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION OF THE COURT
FLAHERTY, Justice.
This is an appeal, by allowance, from an order of the Superior Court, 401 Pa.Super. 129, 584 A.2d 1014, which affirmed a decree of the Court of Common Pleas of Allegheny County ordering an involuntary termination of parental rights under the Adoption Act, 23 Pa.C.S. § 2511. The appellant, Elizabeth M., is the natural mother of two boys, Louis C. and Erick C., ages seven and nine respectively at the time of the hearing in this case, to wit, in 1989. Appellant's parental rights were terminated involuntarily because appellant was *118 unable to provide adequate care for her children. The parental rights of the father of the children, Mr. C., were terminated with his consent.
Appellant suffers from mental retardation. Her education consists of a high school diploma from a school for exceptional children. Appellant's children are similarly afflicted. Erick suffers from both physical and mental retardation. He has an impairment in his ability to walk, speak, etc. Louis is learning-disabled and has an attention deficit. The children first came to the attention of the Allegheny County Children and Youth Services (CYS) in 1982. At that time appellant was a victim of Mr. C's domestic violence and was having difficulty with rent payments and food purchases. Mr. C had expensive drug and alcohol habits. By March of 1983 the situation had worsened to such an extent that the family was evicted from its residence and was forced to seek shelter at a Salvation Army facility.
CYS observed major deficiencies in appellant's capacity as a parent. Appellant failed to feed her children properly and failed to maintain clean and sanitary conditions in the living space that was provided for her. She fed her children from dirty bottles of spoiled and diluted milk, left dirty diapers in their living space for days at a time, and was lax about providing medical care. In December of 1983, the children were adjudicated dependent and placed with a foster family. The foster family has cared for the children since that time and now seeks to adopt them.
Prior to 1982 and continuing for approximately six years, appellant received assistance from numerous remedial programs designed to enhance her homemaking and parenting skills. Although she earnestly participated in the programs, she failed to make any substantial progress in improving her skills and competence to meet the needs of her children. Appellant, impaired by her own mental retardation, was simply not able to care for her children, who, likewise, had special needs as a result of their own disabilities. CYS determined that nothing short of 24-hour supervision by an assistant skilled in the care of special needs children would be sufficient *119 to permit appellant to resume caring for her children. The children were unruly, oppositional, and very difficult to manage. Whenever appellant engaged in supervised visits with them, she was unable to control them. Despite this, appellant maintained an interest in the children and continued to visit them on a frequent and regular basis. She continued to hope that someday the children would be returned to her. Inasmuch as the programs designed to improve appellant's parenting skills had proved fruitless, however, CYS determined sometime in 1985 or 1986 that reunification of the family was impossible and that the best interests of the children would be served by a plan of adoption.
In 1987, appellant, who was no longer residing with Mr. C, moved into a clean apartment with her paramour. The paramour expressed a willingness to assist in caring for appellant's children, but admitted that the children have special needs that make it difficult to care for them, and stated that he and appellant would need help if they were to attempt to provide care.
In 1989, to facilitate an adoption by the children's foster parents, CYS filed a petition seeking termination of appellant's parental rights on the ground that appellant was unable to provide for the needs and welfare of her children. The court of common pleas, after a hearing, denied the petition. Exceptions were filed, and, upon reconsideration, the court reversed its decision, thereby granting the petition. An appeal was taken to the Superior Court, and the termination decree was affirmed.
At issue is whether the decree terminating appellant's parental rights was adequately supported by the evidence and was based upon a proper consideration of the needs and welfare of the children. We discern that an important element relating to the needs and welfare of the children, to wit, the emotional bond between appellant and her children, has been inadequately considered in the proceedings below. Accordingly, we reverse and remand for further proceedings to determine whether termination is warranted.
*120 The termination decree was issued by the court of common pleas pursuant to 23 Pa.C.S. § 2511(a)(2), which provides for termination of parental rights in cases where parental incapacity cannot be remedied. In pertinent part, 23 Pa.C.S. § 2511 provides:
(a) General rule.  The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
. . . .
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
. . . .
(b) Other considerations.  The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child.
It is well established that this provision supplies a basis to terminate parental rights where a child's well-being suffers as a result of the physical or mental impairment of his parent. In re Adoption of J.J., 511 Pa. 590, 607, 515 A.2d 883, 892 (1986). Grounds for termination can consist of lack of capacity and not just affirmative misconduct. Id. See also In re William L., 477 Pa. 322, 345, 383 A.2d 1228, 1239 (1978) ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."), cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978).
In involuntary termination cases, the scope of appellate review and the burden of proof are well defined. As stated in Matter of Adoption of G.T.M., 506 Pa. 44, 46, 483 A.2d 1355, 1356 (1984),
In cases where there has been an involuntary termination of parental rights by the Orphans' Court, the scope of appellate review is limited to the determination of whether *121 the decree of termination is supported by competent evidence. In re Adoption of B.D.S., 494 Pa. 171, 177, 431 A.2d 203, 206 (1981). . . . It is established that, in a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re T.R., 502 Pa. 165, 166, 465 A.2d 642, 642-643 (1983).
See also In re Adoption of J.J., 511 Pa. at 594-96, 515 A.2d at 886 (1986) (clear and convincing evidence necessary to support termination decree).
The record, as heretofore recounted, clearly contains evidence that appellant has been unable to provide proper care for her children. Further, in view of the long time that this incapacity has continued and the failure by appellant to make progress in remedial programs, there is basis to conclude that the incapacity will not be remedied. The fact that there is parental incapacity does not in itself, however, require that parental rights be terminated. Rather, termination must be decreed only where it serves the needs and welfare of the children. 23 Pa.C.S. § 2511(b), supra.
The parties have raised a significant issue in this case that has been inadequately addressed in the record. Specifically, appellant alleges that a strong emotional bond exists between herself and the children and that it would be detrimental to the needs and welfare of the children to have that bond severed through a decree of termination. See generally In re P.A.B., 391 Pa.Super. 79, 86-87, 570 A.2d 522, 525-26 (1990) ("[A] court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial."), appeal dismissed, 530 Pa. 201, 607 A.2d 1074 (1992). Where there has not been adequate consideration of the emotional needs of the children, a termination of parental rights cannot be sustained.
*122 The CYS expert witness in this case, a psychologist, testified that the children interacted well with their foster mother and that they had formed a strong bond with her. However, no observation was made by the psychologist of the children's interaction with the foster father. Similarly, the psychologist made no observation of the children's interaction with appellant and was not able to make any recommendation as to whether the children should be placed with appellant. The psychologist testified that a better assessment of the relevant emotional factors could have been made if the foster father had been observed interacting with the children. She also stated that the children's interaction with appellant should have been evaluated from the same standpoint. She further stated, "I think it is important, if there is an issue about terminating parental rights, that that part of the evaluation is conducted." In addition, she testified that the children continue to maintain an emotional bond with appellant. The children have expressed a desire to live with both their foster parents and their natural parents. They also maintain that they have "two mommies and daddies."
Inasmuch as the psychological evaluations so clearly recommended by CYS's own expert witness have not been performed, and given that the burden of proof is upon CYS as the party seeking termination of appellant's rights to show by clear and convincing evidence that termination meets the needs and welfare of the children, it cannot be said that CYS has met its burden. While the fact that there exists some bond between appellant and the children would not per se block a termination of rights, it is at least a factor that, according to CYS's own expert witness, should have been more fully explored.
The Superior Court, in affirming the termination decree, expressly recognized that the question of the bond between appellant and the children had not been fully considered. Nevertheless, the Superior Court held,
[O]nce a parent is adjudged incompetent under section 2511(a) whereby family unity cannot be preserved, but where adoption is imminent, then there is no need to *123 ascertain whether a beneficial bonding exists as between the natural parent and the children, nor whether additional factors counsel that continuing the relationship might otherwise serve the needs and welfare of the child.
(Emphasis in original). We do not agree. It is clearly conceivable that a beneficial bonding could exist between a parent and child, such that, if the bond were broken, the child could suffer extreme emotional consequences. This is true regardless of whether adoption is imminent. To render a decision that termination serves the needs and welfare of the child without consideration of emotional bonds, in a case such as this where a bond, to some extent at least, obviously exists and where the expert witness for the party seeking termination indicates that the factor has not been adequately studied, is not proper.
Whether the bond exists to such a considerable extent that severing the natural parent-child relationship would be contrary to the needs and welfare of the children is an issue that must be more fully explored by the evidence. Such an intense bond may exist with respect to one, both, or neither of the children. The existing record is simply inadequate in its treatment of this issue.
The order of the Superior Court affirming the decree of the court of common pleas must, therefore, be reversed. The case will be remanded to the court of common pleas for a reevaluation of the needs and welfare of the children, taking into account whatever bonds may currently exist between the children and appellant, as well as other factors having bearing upon whether termination is proper.
Order reversed, and case remanded.