WIEAND, Judge:
 

 This is an appeal by a biological father from an order which, upon petition by a divorced mother, terminated the father’s parental rights to his two children.
 

 Jeffry L. Bowman, II, and Cynthia E. Shuey were married on August 20, 1983, and divorced in September, 1988. Two children were born of the marriage: Jeffry L. Bowman, III, born on August 12, 1985; and Joshua Bowman, born on October 10, 1986. Cynthia has had custody of the children since she and Bowman separated in October, 1987. In April,
 
 *12
 
 1989, Cynthia married Craig P. Shuey, with whom she also has had two children. On April 2, 1992, Cynthia filed a petition in the Court of Common Pleas of Clinton County to terminate the parental rights of Bowman so that his children could be adopted by Shuey.
 
 [1]
 
 On March 24, 1993, a hearing was held. Bowman did not attend the hearing, but he was represented by counsel. The trial court found that Bowman had failed to perform his parental duties and had evidenced a settled intent to relinquish his parental rights. On May 25, 1993, the court entered an order terminating Bowman’s parental rights. A motion for post-trial relief was denied, and a final order was filed on September 7, 1993. Bowman appealed.
 

 Parental rights may be terminated if a “parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition [for termination] either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.” 23 Pa.C.S. § 2511(a)(1). A party seeking to terminate parental rights bears the burden of proving by clear and convincing evidence the statutory grounds for doing so.
 
 In re E.M.,
 
 533 Pa. 115, 121, 620 A.2d 481, 484 (1993);
 
 In re Baby Boy S.,
 
 420 Pa.Super. 37, 44, 615 A.2d 1355, 1358 (1992). “The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.”
 
 Matter of Sylvester,
 
 521 Pa. 300, 304, 555 A.2d 1202, 1203-1204 (1989). See also:
 
 In re Shives,
 
 363 Pa.Super. 225, 228, 525 A.2d 801, 802 (1987);
 
 Lookabill v. Moreland,
 
 336 Pa.Super. 520, 523, 485 A.2d 1204, 1205 (1984).
 

 With regard to the fulfillment of parental duties, the Superi- or Court has observed that
 

 [w]hen a parent is separated from his children, he not only has a duty to love, protect and support them; he also has a duty to maintain communication and association with them.
 
 *13
 

 Adoption of McCray,
 
 460 Pa. 210, 216, 331 A.2d 652, 654 (1975);
 
 In re Adoption of M.J.H.,
 
 348 Pa.Super. 65, 72, 501 A.2d 648, 651 (1985). Our courts have repeatedly stated that being a parent is more than a passive state of mind; it requires constant affirmative demonstration of parental devotion.
 
 M.J.H.,
 
 348 Pa.Super. at 73, 501 A.2d at 652.
 

 In re V.E.,
 
 417 Pa.Super. 68, 76, 611 A.2d 1267, 1271 (1992). See also:
 
 In re Burns,
 
 474 Pa. 615, 624-625, 379 A.2d 535, 540 (1977);
 
 In re Stickler,
 
 356 Pa.Super. 56, 59, 514 A.2d 140, 142 (1986),
 
 allocatur granted,
 
 515 Pa. 584, 527 A.2d 544 (1987);
 
 In re Adoption of Baby Boy J.,
 
 354 Pa.Super. 575, 579, 512 A.2d 689, 691-692 (1986). “A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise ‘reasonable firmness’ in resisting obstacles placed in the path of maintaining the parent-child relationship.”
 
 In re Shives, supra
 
 363 Pa.Super. at 229, 525 A.2d at 803, citing
 
 In re J.L.Z.,
 
 492 Pa. 7, 10, 421 A.2d 1064, 1065 (1980). See also:
 
 In re Adoption of J.F.,
 
 392 Pa.Super. 39, 572 A.2d 223 (1990);
 
 In re Adoption of T.M.,
 
 389 Pa.Super. 303, 566 A.2d 1256 (1989).
 

 A trial court’s inquiry, however, may not cease even when it determines that the statutory requirements of 23 Pa.C.S. § 2511(a)(1) have been met. A trial court must then inquire whether termination will clearly serve the “needs and welfare” of the children. 23 Pa.C.S. § 2511(b). See:
 
 Baby Boy A. v. Catholic Social Serv.,
 
 512 Pa. 517, 523-524, 517 A.2d 1244, 1247 (1986);
 
 In re Adoption of J.J.,
 
 511 Pa. 590, 607, 515 A.2d 883, 892 (1986);
 
 In re E.S.M.,
 
 424 Pa.Super. 296, 304, 622 A.2d 388, 395 (1993). “Courts are required not only to focus on the behavior of the parent but more importantly, are required to consider the effects of termination on the welfare of the ehild[ren].”
 
 In re Adoption of Hamilton,
 
 379 Pa.Super. 274, 280, 549 A.2d 1291, 1294 (1988). “The court must determine by a clear and convincing showing that termination of the parent-child relationship is in the best interests of the child[ren].”
 
 Id.
 
 at 283, 549 A.2d at 1296.
 

 
 *14
 
 “[T]he complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and the child[ren].”
 
 In re Adoption of Michael J.C.,
 
 326 Pa.Super. 143, 152, 473 A.2d 1021, 1026 (1984),
 
 reversed on other grounds,
 
 506 Pa. 517, 486 A.2d 371 (1984). “Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the
 
 intangible
 
 dimension of the needs and welfare of a child — the love, comfort, security, and closeness — entailed in a parent-child relationship, as well as the tangible dimension.”
 
 In re Matsock,
 
 416 Pa.Super. 520, 540, 611 A.2d 737, 747 (1992). “Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful.”
 
 In re William L.,
 
 477 Pa. 322, 348, 383 A.2d 1228, 1241 (1978). The trial court, “in considering what situation would best serve the child[ren]’s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents’ rights would destroy something in existence that is necessary and beneficial.”
 
 In re P.A.B.,
 
 391 Pa.Super. 79, 86, 570 A.2d 522, 525-26 (1990),
 
 appeal dismissed,
 
 530 Pa. 201, 607 A.2d 1074 (1992). “Where there has not been adequate consideration of the emotional needs of the children, a termination of parental rights cannot be sustained.”
 
 In re E.M., supra
 
 533 Pa. at 121, 620 A.2d at 484.
 

 On appeal from an order terminating parental rights, this Court’s scope of review is limited to determining whether the decree of termination is supported by competent evidence.
 
 Matter of Adoption of C.A.E.,
 
 516 Pa. 419, 421, 532 A.2d 802, 803 (1987);
 
 Matter of Adoption of G.T.M.,
 
 506 Pa. 44, 46, 483 A.2d 1355, 1356 (1984);
 
 In re V.E.,
 
 417 Pa.Super. 68, 75, 611 A.2d 1267, 1271 (1992). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the findings of the trial court, the decree must stand.
 
 In re C.E.H.,
 
 429 Pa.Super. 304, 307, 632 A.2d 577, 579 (1993);
 
 In re E.S.M.,
 
 424 Pa.Super. 296, 302, 622 A.2d 388, 391 (1993);
 
 In re G.D.G.,
 
 392 Pa.Super. 575, 577, 573 A.2d 612, 613 (1990). Nevertheless, this Court will examine the record closely in termination
 
 *15
 
 cases to determine whether the evidence supports a termination and will reverse where the evidence fails to support a trial court’s decree and/or where the trial court has failed to give adequate consideration to the effect of such a decree upon the welfare of the child or children. After careful review in the instant case, we are constrained to reverse.
 

 This is not a custody action. The issue is not whether the children should be removed from their mother’s custody. She has been the children’s primary caretaker, and no one has questioned her ability and willingness to provide loving care for her sons. The children’s biological father, on the other hand, has not provided the same quality of care for his children. Whether because of the demands made upon him by his country and/or his employment, it is clear that he has not provided the “hands on” care which has come from the children’s mother. Father, indeed, has shown signs of irresponsibility. He is late for appointments; sometimes he fails to appear at all; and on occasion he has brought the children home late after a visit. Sometimes he also forgets to send gifts or cards on important occasions in the lives of his children. Still, he has supported his children regularly, albeit pursuant to a wage agreement, and he clearly has not abandoned his children or evidenced a settled purpose to relinquish parental rights by failing to perform parental duties.
 

 At the time of separation, father was in the military service and was stationed in Okinawa. In June, 1988, he reported to Camp Pendleton, California. During the time when father was in the service, of necessity, he had little or no contact with his sons. In 1988, however, he did remember his children with Christmas gifts. While on leave during the summer of 1989, father saw his children frequently but experienced difficulty in keeping the schedule which he and mother had arranged and to which mother expected him to adhere. In August, 1989, it appears that father, still in the service, returned to California; and later that year he failed to acknowledge his sons’ birthdays or Christmas with gifts, cards or telephone calls.
 

 
 *16
 
 In the spring of 1990, mother petitioned the court for an order awarding custody of the children to her, and on May 14, 1990, a custody conference was held. Father, although still in the armed forces, appeared at the conference and agreed to an order awarding custody to mother and establishing a schedule for visitation by father. Apparently, father was thereafter discharged from the armed forces but, nevertheless, continued to have difficulty adhering to the agreed schedule. It is clear, however, that he did see his children during the summer of 1990, but on a more irregular basis than mother, and perhaps the children, would have liked.
 

 In the fall of 1990, the order for visitation was changed, at mother’s request, to require that visits take place under supervision of the Clinton County Children and Youth Social Services Agency.
 
 [2]
 
 Father’s visits under this arrangement were made in November but not in December. In January, 1991, father was ordered to return to active duty in the armed forces and, continuing until January, 1992, participated in Operation Desert Storm. Again, he was separated from his children.
 

 In January, 1992, father took employment with PandralJackson, a railroad-related company. This job, which he continues to hold, requires that he be away from home for extended periods of time. In April, 1992, mother filed a petition to terminate father’s parental rights.
 

 When mother, in 1992, experienced behavioral difficulties with the boys, a psychologist met with the interested parties and discovered that a strong bond existed between the boys and their natural father. The boys, it appears, were greatly concerned about their father’s safety and wished to see him more frequently. The psychologist recommended that if father could not see his children regularly because of his job related absences, he maintain regular contact by mail. This was in December, 1992. Father failed to follow this recommendation. By a wage agreement, however, he has continued to support his children.
 

 
 *17
 
 The record in this case paints an unequivocal picture of a father who has demonstrated love and concern for his children only sporadically as and when it has been convenient for him to do so. He has not been a good father and, on frequent occasions has demonstrated a lack of maturity, perhaps even irresponsibility. The record is also clear, however, that he has responded promptly on those occasions when the needs of his sons have demonstrably required a response. Thus, it is difficult to find from the record in this case a father who has “evidenced a settled purpose of relinquishing parental claim to [his children] or [who] has refused or failed to perform parental duties.” Although not a “good” father, it is clear that appellant has been the children’s “father,” and that he has not demonstrated a settled purpose of relinquishing his parental rights.
 

 More importantly, it appears from this record that the breaking of the strong bond which exists between father and sons may well be prejudicial to the best interests of these boys. This was a factor which the trial court failed to consider. The court did not make a finding and, indeed, did not consider whether termination would serve the “needs and welfare” of the children, as required by 23 Pa.C.S. § 2511(b). This, as we have observed, is an important consideration, for the irrevocable termination of parental rights can have a severe and lasting emotional impact on the children as well as on the terminated parent. Our own review of the record in this case fails to disclose evidence that the childrens’ “needs and welfare” will be enhanced by a termination of their father’s parental rights. The bonds between father and children, on the contrary, are, such that a termination of the father’s parental rights will be severely painful and may well inflict emotional injury of substantial, if not permanent, duration.
 

 After careful review, therefore, we conclude that the evidence fails to support the trial court’s order terminating the parental rights of the appellant father. Not only has he not evidenced a settled purpose of relinquishing his parental rights, but the record fails to demonstrate that a termination
 
 *18
 
 of his parental rights will be in the best interests of the children.
 

 Order reversed.
 

 [1]
 

 . An amended petition was filed on September 21, 1992.
 

 [2]
 

 . Father failed to appear at the conference which produced this order.