**In re C.P.**

**Appeal of T.P., Mother of C.P.**

Superior Court of Pennsylvania.

Submitted Jan. 9, 2006.

Filed May 30, 2006.

Nanina D. Takla, Philadelphia, for appellant.

Thomas H. Purl, Public Defender, Philadelphia, for appellee.

Cynthia N. Keller, Philadelphia, for Dept. of Human Services, participating party.

BEFORE: HUDOCK and ORIE MELVIN, JJ. and McEWEN, P.J.E.

OPINION BY HUDOCK, J.:

¶ 1 T.P. (Mother) appeals from the order changing the goal for her three-and-one-half-year-old daughter, C.P., to adoption and terminating the parental rights of Mother and C.P.'s putative father. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Upon review, we reverse and remand.

¶ 2 On December 22, 2003, the Philadelphia Department of Human Services, Children and Youth Division (DHS), filed a petition for a goal change and a petition for termination of parental rights. A hearing was held on September 9, 2004. At the hearing, the trial court received testimony from the DHS social worker, a Bethanna Agency social worker, a licensed psychologist, Mother, maternal grandmother, and the coordinator of Mother's parenting class. After the hearing, the trial court ruled from the bench, determining that DHS established the following facts by clear and convincing evidence:

1. The subject of this Petition is a minor child, who was born on April 7, 2002 in Philadelphia, PA.

2. Mother is T.P., who was born on March 6, 1971 in Philadelphia, PA. Her last known address is 364 Ripka Street, Philadelphia, PA. She is of the Caucasian race and unknown faith.

3. Mother lacks the capacity to care for C.P.

4. The father of C.P. is Unknown Putative Father who was born on an unknown date in an unknown location. His last known address is unknown. He is of unknown race and unknown faith.

5. The putative father has failed to make his whereabouts known to DHS.

6. C.P. was adjudicated dependent on October 22, 2002 by the Honorable Edward R. Russell. The Family Service Plan goal is adoption.

7. Since September 26, 2002, C.P. has been without essential parental care, control and subsistence necessary for her physical or mental well-being, and this situation cannot or will not be remedied by the parents within a reasonable period of time.

8. C.P. has been in the care and custody of DHS continuously for a period in excess of six (6) months, specifically since September 26, 2002 [when she was five months old].

\* \* \*

11. DHS is willing and able to take custody of C.P. and to arrange for and consent to her adoption by suitable persons.

Findings of Fact, 9/9/04. Based on the foregoing, the trial court made the following conclusions of law:

1. C.P. has been without essential parental care, control and subsistence necessary for her physical and mental well-being.
2. Under the Juvenile Act, 42 Pa. C.S.A. § 6351 and 55 Pa.Code § 3140.74, the disposition best suited to the protection and physical, mental and moral welfare of C.P. is Adoption.
3. Under the Adoption Act of 1980, October 15, P.L. 934, No. 163, Section 1, the Philadelphia Department of Human Services may properly file a Petition for a Finding of Involuntary Termination of Parental Rights of T.P. and Unknown Putative Father to C.P. and may ask for custody of C.P.
4. All prerequisites for the filing of a Petition for Involuntary Termination and the entry of such a Decree have been met.
5. The following subsections of 23 Pa. C.S.A. § 2511 establish the basis for terminating the parental rights of T.P. and Unknown Putative Father:

2511(a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either had evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

2511(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

2511(a)(5) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

2511(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

Conclusions of Law, 9/9/04. The trial court then granted DHS' petitions, thereby terminating Mother's and the putative father's parental rights to C.P. Mother appealed, raising the following issues for our review:

1. Did [DHS] fail to present clear and convincing evidence that termination of [Mother's] parental rights best served [C.P.'s] emotional needs and welfare?
2. Did the trial court err in terminating [Mother's] parental rights to [C.P.] without clear and convincing evidence that termination best served the child's emotional needs and welfare?

Mother's Brief at 3.

¶ 3 We recognize that the complete and irrevocable termination of parental

rights is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and the child. *In re Bowman*, 436 Pa.Super. 10, 647 A.2d 217, 218–19 (1994). As the party seeking termination of parental rights, DHS bore the burden of proving by clear and convincing evidence that at least one of the eight grounds for termination under 42 Pa.C.S.A. section 2511(a) exists and that termination promotes the emotional needs and welfare of the child, as set forth in 42 Pa.C.S.A. section 2511(b). *In re B.L.L.*, 787 A.2d 1007 (Pa.Super.2001).

¶ 4 Mother does not appear to be challenging the trial court's findings pursuant to the grounds for termination listed in section 2511(a). In fact, Mother concedes that, despite her efforts, "she was not able to achieve a level of proficiency that would allow her to safely parent her daughter without supervision." Mother's Brief at 5. Rather, Mother's challenge focuses on the trial court's disposition in light of section 2511(b), which concerns the needs and welfare of the child. Mother's Brief at 7–8 (citing *Bowman*, 647 A.2d at 218–19). Mother claims that DHS failed to present clear and convincing evidence that termination would promote the emotional needs and welfare of C.P. Mother's Brief at 8. Moreover, Mother contends, the trial court made a cursory finding that terminating her parental rights would serve C.P.'s best interest and welfare. *Id.* at 13, 647 A.2d 217.

¶ 5 In reviewing Mother's claim, we are guided by well-established principles of law. In an appeal from an order terminating parental rights, our scope of review is broad and comprehensive, but our standard of review is narrow. *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super.2005). We consider all the evidence, along with the legal conclusions and factual findings of the trial court. We reverse only if we find an abuse of discretion, an error of law, or insufficient evidentiary support. *C.M.S.*, 884 A.2d at 1286. With respect to evidentiary support, we determine only whether the trial court's findings are supported by competent evidence. We accord the hearing judge's decision the same deference that we would give to a jury verdict. *Id.*

¶ 6 An inquiry into whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child is a distinct aspect of a termination hearing, to be undertaken only after the statutory requirements of section 2511(a) have been met. *C.M.S.*, 884 A.2d at 1286–87; 23 Pa.C.S.A. § 2511(b). Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. *C.M.S.*, 884 A.2d at 1287. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. *Id.*

¶ 7 At the termination hearing,[1] DHS presented the testimony of Dr. Kathryn Woods, a licensed psychologist. Dr. Woods testified that she conducted an individual evaluation of Mother and a bonding evaluation of Mother and her family. R.R. ¶ 6(a). Dr. Woods identified DHS' Exhibit 3 as her bonding assessment report on Mother and family and DHS' Exhibit 4 as her psychological evaluation of Mother.

---

1. Counsel for C.P. informs us that, due to personal problems involving the court reporter, the hearing transcript had to be recreated under Pa.R.A.P. 1924. Trial counsel collaborated and developed a factual outline of the testimony, which they presented to the trial judge. She certified it to this Court on September 15, 2005. Guardian's Brief at 3, n. 1. Therefore, we rely on the recreated record of testimony (R.R.) in conducting our review.

R.R. ¶ 6(b, d). Mother claims that, in conducting the evaluations, Dr. Woods "did not observe Mother's interactions with [C.P.], nor conduct an evaluation of the bond between [C.P.] and her mother. DHS' psychologist merely observed and evaluated one visit involving Mother, the maternal grandparents, and [C.P.'s] *brother.*" Mother's Brief at 11. According to Mother, "a bonding evaluation of Mother and a sibling is simply not an adequate substitute for a thorough assessment of [C.P.'s] bond with her mother." *Id.* Based on our review of Dr. Woods' testimony (R.R. ¶ 6(a-w)) and DHS' Exhibits 3 and 4, we agree.

¶ 8 Dr. Woods evaluated Mother, and, on one occasion, the interactions of Mother with her parents and her son. Dr. Woods' report and testimony focused on Mother's behavior, her mental retardation and mental illness, and her inability to parent. Thus, Dr. Woods' conclusion that termination of Mother's parental rights to C.P. was appropriate was unbalanced, being based only on Mother's circumstances. Dr. Woods did not evaluate C.P.'s circumstances, namely, her relationship with Mother and the effect termination would have on that relationship. Yet, Dr. Woods concluded that "removing [C.P.] from the care of her parents and providing her with guardians with able parenting skills would be in the child's best interest." R.R. ¶ 6(w). Such evidence might be sufficient to provide grounds for termination under section 2511(a), but it does not satisfy the purpose of section 2511(b).

¶ 9 Unlike Dr. Woods, Lori Park, a social worker with the Bethanna Agency, did testify as to her personal observations of interaction between Mother and C.P. Ms. Park had been C.P.'s social worker since her placement with DHS. R.R. at ¶ 7(a). She often supervised the bi-weekly visits between Mother and C.P. R.R. ¶ 7(c). At those visits, Ms. Park noticed that the interaction between Mother and C.P. "was strained. Ms. Park often observed [Mother] having conversations with her mother, [C.P.'s] maternal grandmother, and not paying attention to [C.P.]." R.R. ¶ 7(c, e). Referring specifically to C.P., Ms. Park reported that she "was often apprehensive and fearful about staying in the room with her mother during the visitation and would cry if Ms. Park left the room for a short period of time." R.R. ¶ 7(f). According to Ms. Park, the interaction in the room did not improve when the grandparents were present. R.R. ¶ 7(g). On the other hand, during her regular visits with C.P. in the foster home, Ms. Park observed that "a bond had developed between [C.P.] and her foster parents and the foster parents had announced their interest in adopting [C.P.]." R.R. ¶ 7(o). The remainder of Ms. Park's testimony focused on Mother's behavior and poor parenting skills and the inability of Mother's parents to care for C.P.

¶ 10 While Ms. Park's testimony provides some insight into the relationship between Mother and C.P., we cannot say that it amounts to clear and convincing evidence that termination would promote the needs and welfare of the child. 42 Pa.C.S.A. § 2511(b). At most, Ms. Park's testimony—which was based on an undisclosed number of observations—creates a negative inference that Mother and C.P. did not have a close relationship. However, like Dr. Woods, Ms. Park appeared more focused on Mother's conduct and lack of skills than on C.P.'s behavior in evaluating their relationship. Also like Dr. Woods, Ms. Park did not address what impact termination of the parent-child relationship would have on C.P.

¶ 11 DHS's witnesses provided evidence to support termination under at least one section of 2511(a). As Mother points out, however, her inability to parent C.P. does

not render "a careful examination of the parent-child bond moot." Mother's Brief at 11. Neither Dr. Woods nor Ms. Park adequately examined the strength of the parent-child bond and the effect of terminating that bond on C.P. *See In re E.M.*, 533 Pa. 115, 620 A.2d 481, 484 (1993), and *In re P.A.B.*, 391 Pa.Super. 79, 570 A.2d 522, 525–26 (1990). Consequently, DHS failed to provide clear and convincing evidence with respect to section 2511(b) that termination would promote the needs and welfare of C.P.

¶ 12 Before turning to Mother's second question, we must address her claim that DHS did not consider the effect of terminating C.P.'s bond with her siblings. DHS argues that Mother waived this claim for three reasons. First, she did not raise it during the hearing, and she cannot raise for the first time on appeal. Pa.R.A.P. 302(a). Second, she did not include it in her Pa.R.A.P. 1925 statement. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998). Third, she failed to support her claim with relevant legal authority or discussion. Pa.R.A.P. 2119(b); *In re Adoption of J.M.M.*, 782 A.2d 1024 (Pa.Super.2001). We agree and, therefore, decline to address this claim.

¶ 13 Mother's second issue challenges the trial court's finding that termination would serve C.P.'s need and welfare as being cursory and unsupported. Mother's Brief at 13. We agree. In its Rule 1925(a) statement, the trial court opined, "T.P., the mother, remains unable to care for the child. It is in the child's best interests if T.P.'s parental rights were terminated. C.P.'s current foster parents have expressed an interest in adopting the child. All facts supported the view that adoption is an appropriate goal and that T.P.'s parental rights should be terminated." Opinion, 10/14/04, at 5–6.

¶ 14 Before reaching its conclusion, the trial court discussed Mother's inability to

parent, finding grounds for termination under section 2511(a). However, the trial court did not explain why termination is in the child's best interest pursuant to section 2511(b). This is not surprising because the record is devoid of any evidence concerning the effect that termination would have on C.P. *Compare, In re Adoption of M.E.P.*, 825 A.2d 1266 (Pa.Super.2003) ("The record contained ample evidence for the trial court to conclude that, although Mother loved M.E.P., no parent-child bond existed between them."). Without such evidence, the trial court was unable to assess the needs and welfare of C.P. if Mother's parental rights were terminated. *In re Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066–67 (1994) (finding where record was devoid of evidence regarding effect termination would have on child, trial court correctly concluded that it had no way of assessing effect of termination on needs and welfare). Consequently, nowhere in the trial court's findings of fact, conclusions of law, or Rule 1925(a) opinion does it make reference to what, if any, relationship C.P. has with Mother and what, if any, impact termination would have on that relationship.

¶ 15 Hence, the trial court offered only a cursory conclusion without supporting evidence on the bond between C.P. and Mother. This will not suffice. *In re Adoption of A.C.H.*, 803 A.2d 224 (Pa.Super.2002) (reversing where, although trial court referenced needs and welfare of child in arriving at its decision to terminate parental rights, it did so in conclusory fashion). Our Supreme Court has specifically noted that the Adoption Act requires that a trial court examine the effect termination will have on the needs and welfare of the child involved. *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa.Super.1998) (citing *Atencio, supra*).

¶ 16 Recognizing the "importance of a child's relationship with his or her biologi-

cal parent," the trial court's failure to "give primary consideration to" C.P.'s needs and welfare in light of terminating Mother's parental rights was clearly erroneous. 23 Pa.C.S.A. § 2511(b); *Godzak.* Such omission is contrary to the express provisions in the Adoption Act and the law of termination as upheld by our Supreme Court. 23 Pa.C.S.A. § 2511–2521; *Godzak. See also, In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993) (holding that, although there was evidence that mentally retarded mother had been unable to provide proper care for her children, her parental rights could not be involuntarily terminated without consideration of emotional bonds she had with her children), and *P.A.B.*, 570 A.2d at 525 ("[I]n a termination proceeding ..., a court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.").

¶ 17 Without competent evidence of record to support the trial court's decision to terminate Mother's parental rights, we are constrained to reverse and remand this matter to give the parties an opportunity to present further testimony regarding the emotional bonds between Mother and C.P., and the effect a termination of parental rights would have on C.P. Subsequent to such hearing, the trial court shall conduct an analysis regarding this issue as well as all other factors bearing upon the termination of Mother's parental rights. *A.C.H.*, 803 A.2d at 229.

¶ 18 Order reversed and case remanded for proceedings consistent with this decision. Jurisdiction relinquished.