**In re L.M.**

**Appeal of S.M., Natural Mother.**

Superior Court of Pennsylvania.

Submitted Jan. 2, 2007.
Filed May 1, 2007.

Beverly N. Muldrow, Philadelphia, for appellant.

Lester R. Zipris, Philadelphia, for appellee.

Cynthia N. Keller, Philadelphia, Participating, Party.

BEFORE GANTMAN, McCAFFERY, and COLVILLE,* JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, S.M. ("Mother"), appeals from the order terminating her parental rights to her daughter, L.M. Appellee, the Philadelphia Department of Human Services, asks us to conclude not only that Mother's appeal was untimely, but also that all of her issues on appeal have been waived for failure to file a concise statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Following careful review, we decline to conclude that Mother's appeal was untimely or that her issues

have been waived; however, we affirm the order of the trial court terminating her parental rights to L.M.

¶ 2 As described by the trial court, the relevant facts underlying this appeal are the following:

The family became known to [the Philadelphia Department of Human Services, Children and Youth Division, hereinafter "DHS"] on January 22, 2004, when DHS received a referral from the Lehigh County, Pennsylvania, Office of Children and Youth Services ("Lehigh County CYD"), stating that Mother and her older child ("G.M.") were involved with Lehigh County CYD, and that Mother was pregnant ... and moving to Philadelphia County. Mother was nineteen (19) years old at the time.

On February 5, 2004, DHS received an emergency [General Protective Services, hereinafter "GPS"] report alleging that Mother gave birth to L.M. in Philadelphia on February 5, 2004 and that Mother had a history of untreated mental health issues and bipolar disorder. The report alleged that Mother was noncompliant with her mental health medication, that she lacked suitable housing, and that she suffered from thrombocytopenia absent radius syndrome (TAR), a rare genetic disorder that causes individuals to be born with shortened limbs.... The report also alleged that G.M., who was fifteen (15) months old, was not in Mother's care. DHS substantiated the report.

On the same date, DHS social worker Andre Williams ("Williams") met with Mother. Mother admitted that she was bipolar and not receiving mental health treatment. Williams suggested imple-

* Retired Senior Judge assigned to the Superior Court.

menting Services to Children in Their Own Homes ("SCOH") with Mother, but Mother refused services. Mother also refused in-home services offered to her by Thomas Jefferson University Hospital to help her prepare for the care of L.M.

* * *

On February 9, 2004, four (4) days after L.M. was born, DHS obtained a Restraining Order ("RO") to obtain custody of L.M. based on [M]other's mental condition and lack of housing. On February 12, 2004, the Honorable Ramy I. Djerassi lifted the RO and ordered DHS's temporary commitment of L.M. to stand. On February 18, 2004, Judge Djerassi adjudicated L.M. dependent and committed her to the care of DHS. Since that time, L.M. has been in DHS'[s] continuous care.

(Trial Court Opinion, dated September 28, 2006, at 2–3) (citations to record omitted).

¶ 3 On January 23, 2006, DHS filed petitions for goal change to adoption and termination of parental rights. Following a hearing on February 7, 2006, the court entered an order on February 24, 2006, granting both the goal change to adoption and the termination of Mother's parental rights.[1] Mother filed an appeal on April 18, 2006. On June 14, 2006, the court filed an order directing Mother to file a concise statement of matters complained of on appeal within 14 days, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Although there is no indication from the certified record that Mother filed a 1925(b) statement, the trial court opinion indicates that the court received her statement, albeit 12 days past the 14 day limit provided by Rule 1925. (Trial Court Opinion at 1).

The trial court addressed Mother's issues in a detailed opinion.

¶ 4 Mother raises two issues for our review:

A. Whether The Trial Court Erred In Involuntarily Terminating The Mother's Parental Rights Where There Was Undisputed Testimony That The Mother Had Consistently ... Visited Her Child and There Was A Bond Between The Mother and Children and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the children?

B. Whether The Trial Court Erred In Involuntarily Terminating The Mother's Parental Rights Where It Was Not Supported By Clear And Convincing Evidence When The Mother Completed All Of Her Goals?

(Mother's Brief at 5).

¶ 5 Before we can address the merits of Mother's issues on appeal, we must address two preliminary matters: first, a motion, filed by DHS, to quash Mother's appeal as untimely, and second, the consequences of Mother's failure to file a Rule 1925(b) statement.

■■■ ¶ 6 DHS contends that Mother's appeal is untimely because it was not filed within 30 days after entry on the docket of the termination order, as required by Pa. R.A.P. 903(a). We decline to find Mother's appeal untimely for the following reasons. Rule of Appellate Procedure 108(b) designates the date of entry of an order as "the day on which the clerk makes the notation in the docket that *notice* of entry

---

1. The court also terminated the parental rights of L.M.'s father, whose identity and whereabouts are unknown.

of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b) (emphasis added). Our Supreme Court has held that "an order is not appealable until it is entered on the docket *with the required notation that appropriate notice has been given.*" *Frazier v. City of Philadelphia,* 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (emphasis added). Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run. *Id.* at 621–22, 735 A.2d at 115. Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly. That the appealing party did indeed receive notice does not alter the rule that the 30–day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given. *Id.*

■ ¶ 7 In the instant case, although the termination order was entered on the docket on February 24, 2006, the docket does *not* show that *notice* of entry of the termination order was given to Mother. Therefore, Mother's appeal period was not triggered and her notice of appeal, which was filed on April 18, 2006, will not be considered untimely. DHS's motion to quash is denied.

■ ¶ 8 The second preliminary matter concerns Mother's failure to file a Rule 1925(b) statement after being ordered to do so by the trial court. In *Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (1998), our Supreme Court held that in order to preserve claims for appellate review, an appellant must comply with a trial court order to file a Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b). Our Supreme Court recently reiterated the bright-line rule established in *Lord,* holding that "failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in

automatic waiver of the issues raised [on appeal]." *Commonwealth v. Schofield,* 585 Pa. 389, 393, 888 A.2d 771, 774 (2005); *see also Commonwealth v. Castillo,* 585 Pa. 395, 403, 888 A.2d 775 (2005) (same). If an appellant does not comply with an order to file a Rule 1925(b) statement, all issues on appeal are waived—even if the Rule 1925(b) statement was served on the trial judge who subsequently addressed in an opinion the issues raised in the Rule 1925(b) statement. *Schofield, supra* at 393–94, 888 A.2d at 773–74. Although recognizing that such a strict application of the Rule may be harsh, our Supreme Court stressed that failure to file the Rule 1925(b) statement "results in the inability of the appellate courts to determine which issues were presented to the trial court, and thus preserved for appeal, and whether the trial court received the statement within the required time period." *Id.* at 394, 888 A.2d at 774–75.

¶ 9 The rule delineated in *Lord* has been applied in the context of family law cases. *See, e.g., Ramer v. Ramer,* 914 A.2d 894, 902 (Pa.Super.2006) (in a child custody case, concluding that one of the mother's issues was waived on appeal because it had not been raised in her Rule 1925(b) statement); *In re C.P.,* 901 A.2d 516, 522 (Pa.Super.2006) (in a case involving termination of a mother's parental rights, concluding that one of the mother's claims was waived for, *inter alia,* failure to include it in her Rule 1925(b) statement); *In re C.M.,* 882 A.2d 507, 515 (Pa.Super.2005) (in an appeal from an order to pursue a goal of adoption by a child's foster parents, concluding that one of the parent's issues was waived for failure to have raised it in the Rule 1925(b) statement and stating that the holding of *Lord* applies to family law cases).

¶ 10 However, as an *en banc* panel of this Court has recently held, strict applica-

tion of the bright-line rule in *Lord* necessitates strict interpretation of the rules regarding *notice* of Rule 1925(b) orders. *Commonwealth v. Davis*, 867 A.2d 585, 588 (Pa.Super.2005) *(en banc)*. The Pennsylvania Rules of Civil Procedure require the prothonotary to give written notice of the entry of a court order to each party and to note on the docket that notice was given. Specifically, Rule 236 provides, in relevant part, as follows:

**Rule 236. Notice by Prothonotary of Entry of Order, Decree, or Judgment**

(a) The prothonotary shall immediately give written notice of the entry of

* * *

(2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

(b) The prothonotary shall note in the docket the giving of the notice. . . .

Pa.R.C.P. 236; *see also Forest Highlands Community Association v. Hammer*, 879 A.2d 223, 227 (Pa.Super.2005); *Laws v. Laws*, 758 A.2d 1226, 1228 (Pa.Super.2000).

■ ¶ 11 If the docket does not show that notice of the entry of a Rule 1925(b) order was provided to an appellant, then we will not conclude that the appellant's issues have been waived for failure to file a Rule 1925(b) statement. *Forest Highlands Community Association, supra* at 229; *Laws, supra* at 1228. That a party may have actually received notice is not determinative under circumstances where the docket does not reflect that notice was sent. *See Frazier v. City of Philadelphia*, 557 Pa. 618, 621–22, 735 A.2d 113, 115 (1999) (reiterating that the procedural rules are designed to "promote clarity, certainty and ease of determination" and to eliminate the need for the appellate court to engage in a case-by-case factual determination of whether an appeal was perfected in timely manner).

■ ¶ 12 In the case *sub judice*, there is no notation on the docket that Mother was served with notice of the trial court's Rule 1925(b) order. The docket does show that the court's order was filed on June 14, 2006. In addition, the certified record contains a document indicating proof of service signed by the trial judge and dated June 14, 2006. Mother does not claim that she did not receive notice of the order; in fact, neither Mother's brief nor her other filings state anything whatsoever about the Rule 1925(b) order. According to the trial court opinion, Mother served her Rule 1925(b) statement on the trial judge 12 days late. The judge then wrote a detailed opinion.

¶ 13 On this record, we decline to conclude that Mother has waived all her issues on appeal for failure to file a timely Rule 1925(b) statement. Our Supreme Court has interpreted the rules surrounding Rule 1925(b) statements very strictly and has not hesitated to find waiver when a party does not conform precisely to these rules. *See, e.g., Schofield, supra* at 393–94, 888 A.2d at 773–74. Fairness dictates that we should also strictly interpret the rules applicable to the court. *See Davis, supra* at 588 (concluding that if the court is going to be strict in holding appellants to the dictates of *Lord*, the court "should also be strict in requiring the trial court and clerk of courts to comply with the rules regarding notice of Rule 1925(b) orders"). Because the docket does not show that notice of the court order to file a Rule 1925(b) statement was served on the parties, as required by Pennsylvania Rule of Civil Procedure 236(b), we decline to conclude that Mother has waived her issues on appeal.[2]

2. *See also Jara v. Rexworks Inc.*, 718 A.2d 788, 791 (Pa.Super.1998) (concluding, in a case

¶ 14 We now turn to the merit of those issues. In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. *C.P., supra,* 901 A.2d at 520. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. *Id.* The trial judge's decision is entitled to the same deference as a jury verdict. *Id.*

¶ 15 Termination of parental rights is controlled by statute. *See* 23 Pa.C.S.A. § 2511; *In re R.J.S.,* 901 A.2d 502, 507 (Pa.Super.2006). Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. *Id.* at 508. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). *Id.* Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. *Id.* One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *Id.; C.P., supra* at 520.

¶ 16 In Mother's first issue on appeal, she contends that the trial court ignored the bond between Mother and L.M. and the effect on L.M. of severing this bond. However, the certified record and the trial court opinion belie Mother's contention. Our careful review of the record reveals considerable unchallenged evidence that little if any bond existed between Mother and L.M.

¶ 17 Two social workers who had been assigned to Mother's case and who had supervised visits between Mother and L.M. testified as to the lack of a parent-child bond. For example, Eric Bethea, the social worker who had most recently observed Mother's visits with L.M., testified in relevant part as follows:

> [DHS Counsel]: In terms of that relationship [between Mother and L.M.], how would you describe it at this time?
>
> [Mr. Bethea]: In terms of the relationship, there is no bonding there.
>
> [DHS Counsel]: What do you mean when you say that?
>
> [Mr. Bethea]: The child has not bonded as parent to child.
>
> [DHS Counsel]: Can you give an example in terms of the interactions you observed?
>
> [Mr. Bethea]: The child doesn't actually interact with [Mother]. The child interacts by running around[,] not necessarily being direct with [Mother]. When [L.M.] is at visits she will run away and play with the staff rather than [with Mother].

(Notes of Testimony, Hearing ("N.T."), 2/7/06, at 116).

¶ 18 In addition, a social worker at "family school," where Mother was enrolled to

---

where local practice had relieved the prothonotary of the responsibility of providing notice when the trial court had directly served its order on the litigants, that the prothonotary was nonetheless not relieved of the duty to note on the docket the date that the court mailed notice).

learn parenting skills, testified that Mother was distant with L.M. and gave more attention to her other child. (*Id.* at 102–03).

¶ 19 The only evidence that could even arguably support the existence of a bond between Mother and L.M. was Mother's testimony that she loved her daughter, had been consistent with visitation, and had tried to talk with L.M. whenever possible. (*Id.* at 135). Mother did not testify as to her perception or understanding of a parent-child bond between her and her daughter. There was absolutely *no* evidence that severing the ties between Mother and L.M. would have a negative effect on the child. Rather, unrefuted testimony indicated that L.M. was strongly bonded to her foster mother and was thriving in her foster home.

¶ 20 The trial court opinion makes abundantly clear that the court did not ignore the issue of parent-child bonding in arriving at its decision. The trial court found that little if any parent-child bond existed between Mother and L.M., that Mother had not made the establishment of a bond with L.M. a priority, that Mother could not now or in the foreseeable future provide comfort, security, and stability to L.M., and therefore that it was in L.M.'s best interest to be adopted by her foster mother. Because all the trial court's findings have support in the record, we will not disturb them.

¶ 21 In Mother's second issue, she contends that the trial court erred in terminating her parental rights despite her having completed all of her family service plan goals. Exactly what goals Mother believes she has achieved are not specified in her brief. By contrast, the trial court opinion discusses in detail the numerous goals which Mother has *not* achieved, including, in part, the following.[3] Mother was asked to leave the family school program for lack of cooperation, poor attendance, and refusal to accept or implement the skills being taught; at the time of the hearing she was enrolled for a second time in family school, but the problems remained. Mother's mental health problems had not been stabilized, and she did not consistently comply with treatment recommendations or provide documentation of her attendance at therapy when asked to do so. Mother had not secured stable housing. Mother's attendance at visitations with L.M. was not consistent. Mother had not completed an anger management program. There is record evidence to support *all* of these findings regarding Mother's inability or unwillingness to complete her family service plan goals. We will not disturb the trial court's well-supported and reasoned determinations.

¶ 22 In summary, after careful review of the record, we conclude that there is no merit to Mother's assertions; therefore, we affirm the order of the trial court terminating Mother's parental rights to L.M.

¶ 23 Order affirmed. Motion to quash denied.

---

3. The trial court found that Mother had completed two family service plan goals: remaining free from alcohol and drug abuse and resolving a criminal matter in Lehigh County.