J-S24028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.T.H. A/K/A D.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.H., BIRTH MOTHER | : | No. 1788 WDA 2016 |

Appeal from the Decree October 26, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  CP-02-AP-0000017-2016

| | | |
|---|---|---|
| IN RE: D.R.H., JR., A/K/A D.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.H., BIRTH MOTHER | : | No. 1789 WDA 2016 |

Appeal from the Decree October 26, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  TPR No - CP-02-AP-0000018-2016

BEFORE:   PANELLA, STABILE, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MAY 17, 2017**

K.H. ("Mother") appeals from the decrees entered October 26, 2016, in the Court of Common Pleas of Allegheny County, which involuntarily terminated her parental rights with respect to her minor daughter, D.T.H.,

_____

[*] Former Justice specially assigned to the Superior Court.

born in April 2013, and her minor son, D.R.H., Jr., born in May 2014 (collectively, "the Children").[1] After careful review, we affirm.

Mother first came to the attention of Allegheny County Children, Youth and Families ("CYF") in February 2014, after CYF learned that two of her older children, who are not involved in this appeal, "held down a four-year-old's hand on a radiator and caused a burn." N.T., 10/26/2016, at 68. As a result of this incident, Mother was charged with endangering the welfare of children. *Id.* at 72. In addition, Mother tested positive for cocaine at the time of D.R.H., Jr.'s, birth in May 2014. *Id.* at 75. CYF provided in-home services to Mother, but services closed unsuccessfully in August 2014 due to her failure to participate. *Id.* at 69, 75.

On September 9, 2014, during a dependency hearing for one of Mother's older children, Mother tested positive for cocaine and marijuana. *Id.* at 69, 71. That same day, Mother was arrested for failing to appear at a hearing relating to her endangering the welfare of children charge. *Id.* at 77. CYF obtained emergency custody authorizations for both of the Children. *Id.* at 72. The Children were adjudicated dependent by orders dated October 8, 2014, and CYF placed the Children with their current pre-adoptive foster mother, Q.J. ("Foster Mother"). *Id.* at 73-74.

_____

[1] The decrees also terminated the parental rights of the Children's putative father, D.H., and the parental rights of any unknown father that the Children may have. Neither D.H., nor any unknown father, has appealed the termination of his parental rights.

Following the adjudication of dependency, Mother failed to complete her court-ordered reunification objectives. Most critically, Mother failed to comply with drug and alcohol treatment, and failed to attend a majority of her random urine screens. *Id.* at 79, 81. Mother attended only twenty-three out of the sixty-six requested screens between September 9, 2014 and October 6, 2016. *Id.* at 81. Five of the screens that Mother did attend were positive, including Mother's most recent screen on August 6, 2016, which was positive for THC. *Id.* at 99, 127.

CYF filed petitions to involuntarily terminate Mother's parental rights to the Children on February 2, 2016. The orphans' court conducted a termination hearing on October 26, 2016. Following the hearing, the court entered decrees involuntarily terminating Mother's parental rights. Mother timely filed notices of appeal on November 22, 2016, along with concise statements of errors complained of on appeal.

Mother now raises the following claim for our review. "Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S.[A.] §[]2511(b)?" Mother's brief at 19.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported

by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b), which provide as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).

On appeal, Mother concedes that CYF presented clear and convincing evidence that her parental rights should be terminated pursuant to Section 2511(a). Mother's brief at 23 ("CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to 23 Pa.C.S.[A.] §[]2511(a)(2)."). Thus, we need only consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). The requisite analysis is as follows.

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the

> importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Mother argues that her visits with the Children are appropriate, and that the Children are bonded to her. Mother's brief at 26. Mother argues that the orphans' court abused its discretion by focusing on her failings as a parent, rather than the Children's emotional well-being, when deciding to terminate her parental rights. *Id.*

In its findings of fact, the orphans' court found that the Children have a bond with Mother, but that their primary bond is with Foster Mother. Orphans' Court Opinion, 12/21/2016, at 9 (Findings of Fact ¶ 31, 33). The court found that the Children's need for a permanent home outweighs their bond with Mother, and that terminating Mother's parental rights would serve their needs and welfare. *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, CYF presented the testimony of psychologist, Patricia Pepe, Ph.D. Dr. Pepe testified that she conducted interactional evaluations of the Children and Mother on November 19, 2014, March 30, 2016, and August 18, 2016. N.T., 10/26/2016, at 7, 15-16, 23, 35, 41. In addition, Dr. Pepe conducted interactional evaluations of the

Children and Foster Mother on March 30, 2016, and August 18, 2016. *Id.* at 12, 21, 41.

Based on these evaluations, Dr. Pepe opined that the Children have a positive attachment to Mother. *Id.* at 33, 51. The Children were obviously familiar with Mother and were comfortable in her presence. *Id.* at 24. The Children also referred to Mother as "mommy." *Id.* at 47. Dr. Pepe described this attachment as follows: "It was more not in the sense of day-to-day kind of experiences, but in terms of visiting with their mother. They knew who she was, they could identify her, and they were relaxed and comfortable in her presence." *Id.* at 17-18.

Nonetheless, Dr. Pepe opined that the Children's primary attachment is to Foster Mother. *Id.* at 23, 33. Dr. Pepe acknowledged that the Children's behaviors were similar with both Mother and Foster Mother. *Id.* at 48. The Children were very happy and relaxed in the presence of Foster Mother, and they also referred to her as "mommy." *Id.* at 22, 44. However, the Children displayed a greater degree of familiarity with Foster Mother. *Id.* at 51. Dr. Pepe provided the following description: "The [C]hildren were happy with their mother, but there was a greater sense of harmony, a kind of give and take, a familiarity of connection with [Foster Mother] than there has been with [Mother], although it was positive with [Mother]." *Id.* at 48.

Dr. Pepe further opined that terminating Mother's parental rights would not cause irreparable harm to the Children. *Id.* at 33. Dr. Pepe explained,

> I think they might miss her and they might question her. I certainly feel that [Foster Mother] is capable of addressing those issues with her, and, you know, I just feel . . . that the children have such a positive connection with [Foster Mother], that they'll be able to move on.

*Id.* Ultimately, Dr. Pepe recommended terminating Mother's parental rights so that the Children may be adopted and provided with permanency. *Id.* at 33-34, 61.

Thus, the record supports the finding of the orphans' court that the Children's primary bond is with Foster Mother, rather than Mother. Further, the record supports the court's finding that the Children will not suffer irreparable harm if Mother's parental rights are terminated. It was within the court's discretion to accept Dr. Pepe's opinions and recommendations, and to conclude that the benefits of a permanent home with Foster Mother would outweigh any emotional distress that the Children might experience if their relationship with Mother is ended.

In addition, we reject Mother's claim that the orphans' court placed an undue emphasis on her failings as a parent. Mother is correct that Section 2511(b) focuses on the welfare of the Children, and not on Mother's parental incapacity. However, it is beyond cavil that Mother's incapacity, and the likelihood that she will never remedy that incapacity, is an important consideration when determining what is best for the Children. *See C.D.R.*,

111 A.3d at 1220 (citing *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003)) ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.").

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights to the Children. We therefore affirm the court's October 26, 2016 decrees.

Decrees affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2017

- 10 -