J-A20020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.J.K. | : | |
| | : | |
| Appellant | : | No. 539 MDA 2017 |

Appeal from the Order February 27, 2017
In the Court of Common Pleas of Wyoming County
Civil Division at No(s): 2014-1172

BEFORE:   GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 26, 2017**

J.J.K. ("Father") appeals from the order entered[1] on February 27,

2017, in the Court of Common Pleas of Wyoming County, which denied his

---

[1] Father's notice of appeal states that he "appeals to … [this Court] … from the Order entered in this matter on the 24th of February, 2017…." Notice of Appeal, filed 3/27/17. In its opinion, the trial court asserts Father's appeal is untimely. ***See*** Trial Court Opinion, 4/7/17, at 1. It is not.

 "[N]o order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court." Pa.R.A.P. 301(a)(1). The entry of an order and the specific date of entry is defined in Rule 108(b): "The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)." Pa.R.A.P. 108(b). Rule 236(b) requires that "[t]he prothonotary shall note in the docket the giving of the notice…." "Thus, pursuant to the express terms of the rules, an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999) (citations omitted). ***See also*** G. Ronald Darlington, et al., Pennsylvania Appellate Practice § 108:10, Volume 20 (2016-2017 ed.). "[T]his is a bright-line rule, to be interpreted strictly." ***In re L.M.***, 923 A.2d 505, 509 (Pa. Super. 2007). "The procedural requirements reflected in the

petition for contempt and modified the parties' child custody award. We affirm in part, vacate in part, and remand.

---

rules serve to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether an appeal was perfected in a timely manner, thus eliminating the need for a case-by-case factual determination." *Frazier*, 735 A.2d at 115 (citation omitted).

The Court of Common Pleas of Wayne County's docket entries do not comply with Rule 236(b). The order at issue was docketed on February 27, 2017. But there is no indication in the docket entries when the Prothonotary provided notice to the parties. Typed beneath the trial judge's signature on the order on the left hand margin of the page are counsels' names, presumably as a carbon copy. Somehow, Father received notice of the order. Our Supreme Court has cautioned, however, that the fact "that the parties may have received notice of the order does not alter the formal date of its entry and the associated commencement of the period allowed for appeal for purposes of the rules." *Id*.

As explained above, the appeal period in this case was never formally triggered. *See Frazier*; *In re: L.M.* It would, however, be a waste of judicial resources to remand this matter now solely for the proper filing and notation of Rule 236(b) notice. Accordingly, in the interest of judicial economy, we will regard as done what should have been done and address this appeal on the merits. *See id*., at 509 (addressing appeal on merits where notice of appeal was filed well after entry of the order where the docket did not show providing of notice).

But we caution the Prothonotary of the Court of Common Pleas of Wayne County to comply with Rule 236(b). Otherwise, the Prothonotary is docketing orders without triggering appeal periods. And that is simply unacceptable.

**We direct the Honorable Russell D. Shurtleff, P.J., to provide a copy of this decision to Edward "Ned" Sandercock, Prothonotary of the Court of Common Pleas of Wayne County.**

In any event, assuming for the sake of argument that the order was properly entered on February 24, 2017, the date the trial court uses, Father's notice of appeal would have been timely filed. Thirty days after February 24, 2017, was Sunday, March 26, 2017. Thus, Father's notice of appeal would have been due on Monday, March 27, 2017. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.")

We summarize the relevant factual and procedural history of this matter as follows. J.K. ("Mother") commenced the underlying custody proceedings by filing a complaint in divorce on October 3, 2014, which included a count requesting legal and primary physical custody of the parties' minor children, O.K., a female born in March 2004, and J.K., a male born in March 2006 (collectively, "the Children"). After several continuances, the parties appeared before the trial court for a custody conference on March 22, 2016. Following the conference, the court issued an agreed-upon custody order, awarding shared legal custody of the Children to both parties, and awarding primary physical custody to Mother. The order awarded Father partial physical custody on alternating Saturdays from 9:00 a.m. to 9:00 p.m., or from 12:00 p.m. to 9:00 p.m. if Father worked during the preceding Friday evening. In addition, during the school year, the order awarded Father partial physical custody one day per week from after school until 7:00 p.m., and every Sunday from after church until 6:00 p.m.

The parties appeared for a second custody conference before the trial court on November 1, 2016. Following the conference, the trial court entered an additional order, directing that Father must provide the court with an updated medical report, as well as a safety and suitability study of his new residence. The order further directed that, once Father complied with these requirements, he and Mother could enter into a custody stipulation modifying the terms of the March 22, 2016 custody order.

On December 12, 2016, Mother filed a petition for special relief, in which she averred that Father failed to comply with the November 1, 2016 order, in that he had not obtained a safety and suitability study of his residence. Mother further averred that she and Father had agreed to an informal modification of the custody schedule, whereby Father's custody periods were shortened to five hours per day, and that Father now was refusing to comply with the informal modification. In response, the trial court issued an order on December 20, 2016, suspending Father's partial physical custody of the Children pending receipt of the safety and suitability study.

On January 9, 2017, the trial court issued another order indicating it had received the safety and suitability study of Father's residence, and directing the parties to advise the court within ten days whether they were able to arrive at a custody stipulation. On January 17, 2017, Father filed a petition for contempt, averring that Mother was preventing him from having phone contact with the Children, and from exercising his periods of partial physical custody pursuant to the March 22, 2016 order. On February 1, 2017, Father filed a petition for modification of custody order, averring the parties had failed to arrive at a custody stipulation.

The parties appeared for another custody conference on February 24, 2017. Following the conference, the trial court issued the order complained of on appeal in which it denied Father's petition for contempt and modified

the parties' custody award. Specifically, the order awarded Father partial physical custody "on his off weekends" from 8:00 p.m. on Friday until the start of school on Monday, or until 5:00 p.m. on Monday if there is no school. The order further directed that Father's periods of partial physical custody would begin at 12:00 p.m. on Saturday if Father worked during the preceding Friday evening. In addition, the order awarded Father partial physical custody each week on either Wednesday or Thursday, depending on his work schedule, from 3:00 p.m. until 7:00 p.m. Father timely filed a notice of appeal on March 27, 2017, along with a concise statement of errors complained of on appeal.

Father raises three issues for our review. Given our disposition, we need only address the first issue: "Did the trial court abuse its discretion or commit an error of law where it appears from a review of the record that there is no evidence to support the court's findings?" Father's Brief, at 4.

We address this issue pursuant to the following standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding a form of custody are set forth at 23 Pa.C.S.A. § 5328(a)(1)-(16).

A trial court must consider each of the § 5328(a) factors when awarding a form of custody. ***See id***. Similarly, if a court modifies a form of custody, or is asked to modify a form of custody, the § 5328(a) factors must be considered.[2] ***See id***., at 406. Because custody decisions must be supported by competent evidence of record, a court may not conduct its analysis of the § 5328(a) factors absent an evidentiary hearing. ***See V.B.***, 55 A.3d at 1197. However, it is not necessary for a court to consider the § 5328(a) factors, or to conduct an evidentiary hearing, when the record reveals that the court entered the subject custody order upon agreement by both parties. ***See*** Pa.R.C.P. 1915.7 ("If an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel.")

---

[2] A trial court need not analyze the § 5328(a) factors if it is not considering a change to the parties' form of custody, but merely is considering "a discrete custody-related issue," such as "a dispute over a custody-exchange location; which youth sports the children should play; or whether a parent should be required to have children's toys, beds, or other things in his or her house." ***S.W.D.***, 96 A.3d at 402-403 (footnote omitted).

- 6 -

Here, Father argues that the trial court erred or abused its discretion by modifying the parties' custody schedule without conducting an evidentiary hearing. **See** Father's Brief, at 8-13. Father states that no transcript of the February 24, 2017 custody conference exists. **See id**., at 6, 11-12. However, Father contends that his counsel informed the court that the parties had not reached an agreement as to custody, and that Father wished to be heard. **See id**., at 6, 14. Father avers that the court informed his counsel that it would only be available for an hour that day, and that no hearing was possible. **See id**. As a result, Father asserts, he "accepted the Court granting him immediate physical custody of his children rather than the alternative of not seeing the children, and waiting two (2) or three (3) months for hearing at which he could finally present testimony." **Id**., at 14. He had no choice, he claims, but to accept whatever custody time was offered to him, and that his acceptance should not excuse the lack of evidentiary support for the court's findings. **See id**., at 15-19.

In its opinion, the trial court addressed Father's claim as follows.

This matter came before this Court for Custody Conference on February 24, 2017. After meeting in chambers and counsel for the parties indicating they had reached an agreement, this Court issued an Order on the record. At no time did counsel for [Father] object to the Court's Order. Furthermore, at no time did counsel for [Father] request that testimony be placed on the record. [Father] then filed an untimely appeal on March 27, 2017 with the Pennsylvania Superior Court.

Because counsel for [Father] never placed any objection on the record nor asked for his client to be heard following a custody conference in chambers during which custody was discussed and

agreed upon, this Court is unaware of the basis for [Father's] untimely appeal. Should [Father] desire a modification of this Court's February 24, 2017 Order, he should file the appropriate Petition with this Court.

Trial Court Opinion, 4/7/17, at 1 (section headings omitted).

Despite Father's claim that no transcript of the February 24, 2017 custody conference exists, the certified record on appeal does, in fact, contain that transcript.[3] We have read the transcript in its entirety.

During the custody conference, the trial court and the parties reached an agreement regarding Father's petition for contempt. Specifically, the parties agreed that Father would withdraw his petition for contempt and grant Mother possession of the marital residence in their divorce proceedings, in exchange for Mother withdrawing her Protection From Abuse ("PFA") action against Father. *See* N.T., 2/24/17, at 4-6. The following discussion then took place.

[By the court:]

Then, we'll move onto the custody matter. *I understand we were not in agreement with the custody*. First of all, the petition for contempt is being-being [*sic*] vacated. Is that correct?

[Counsel for Father:]

_____

[3] Curiously, Father included a copy of the February 24, 2017 transcript in his reproduced record. Unlike the transcript contained in the certified record, the cover page of the transcript in Father's reproduced record indicates that the proceeding took place on December 29, 2016. It is clear the transcript in question is the transcript of the February 24, 2017 proceeding, because the court mentions the date several times. *See*, *e.g.*, Reproduced Record at 26a ("And now, this 24th day of February, 2017. . . .")

Yes, that's part of the consideration, your honor, for the withdrawal of the extension of the PFA, which means the PFA would now be dismissed.

[By the court:]

Very good. We'll do a separate order, which will then cover the custody. Again, 1172 of 2014, and now this 24th day of February, this matter came before the court for petition for contempt of a custody order. Upon motion of the moving counsel and concurrence by opposing counsel, it is ordered that said petition for contempt be and is hereby vacated. It is further ordered-and we do have a prior custody order in place. Is that correct?

[Counsel for Mother:]

Correct, your honor, March 22, 2016.

[Counsel for Father:]

Right.

[By the court:]

It is further ordered that this court's custody ordered [*sic*] dated March 22, 2016 shall be amended as follows: . . . .

\*\*\*

[By the court:]

Alright, we'll leave it at 8:00 then. [Counsel for Mother], anything further?

[Counsel for Mother:]

In terms of the custody, your honor, no, I do not believe, based on our discussion in chambers, and then just the parties would file for a review should we need to discuss anything further?

[By the court:]

- 9 -

And that is your right to do that, either party, at any time, but essentially, what has occurred here is I placed a burden, counsel, on the two of you. We need to get this divorce moving. It is-it's a 2014 case. It's now 2017. That's why I've got a 60-day window. Either settle it or we'll go in front of a master and let the master decide it, but we need to get it done. It's dragging, and by this dragging, it's unhealthy not only for the children, but for both parties so we'll get it moving.

[Counsel for Father:]

Thank you.

[By the court:]

*And we'll note for your clients that there was not agreement between counsel and that this court has inserted its own opinion with respect to areas that weren't in agreement.*

[Counsel for Father:]

Thank you, judge.

[Counsel for Mother:]

Thank you, your honor.

*Id*., at 6-11 (emphasis added).

The transcript reveals that the parties did not reach an agreement regarding custody during the February 24, 2017 custody conference. Because the parties did not reach an agreement, the trial court was not permitted to modify the parties' custody schedule absent an analysis of the § 5328(a) factors. **See S.W.D.**, 96 A.3d at 406. Further, the court could not engage in its analysis of the § 5328(a) factors absent an evidentiary hearing. **See V.B.**, 55 A.3d at 1197. Without a hearing, the court's findings

as to the § 5328(a) factors, and its conclusion as to what custody arrangement would serve the best interests of the Children, would be mere conjecture. Accordingly, we agree with Father that the court abused its discretion by modifying the parties' custody schedule in its February 27, 2017 order.

For the foregoing reasons, we vacate the portion of the trial court's order modifying the parties' custody schedule, and we remand this matter for the court to either conduct an evidentiary hearing, or to enter a custody order that has been agreed upon by both parties. The portion of the order concerning the contempt petition is affirmed; it was not challenged in this appeal.

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2017