J-S78029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.P., BIOLOGICAL | : | |
| FATHER | : | No. 1094 WDA 2017 |

Appeal from the Order July 7, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000055-2017

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                **FILED DECEMBER 26, 2017**

J.P. ("Father") appeals from the Order entered July 7, 2017, in the Court of Common Pleas of Allegheny County involuntarily terminating his parental rights to his minor son, A.M. ("Child").[1, 2]   Because the record supports the trial court's decision, we affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Child came to the attention of the Allegheny County Office of Children, Youth and Families ("CYF") in May 2015 when he tested positive for opioids

---

* Retired Senior Judge assigned to the Superior Court.

[1] The initials of the Child's name appear on his birth certificate as "A.P." Elsewhere in the record, his name appears with the initials A.P., A.M., and A.P.-M.

[2] In its order, the trial court also terminated the parental rights of Child's mother, A.L.M. ("Mother").  Mother did not appeal the termination of her parental rights, nor did she file a brief in connection with the instant appeal.

at birth and Mother admitted to using heroin during the pregnancy and on the morning of his birth. N.T., 7/7/17, at 51-52. Despite Mother's admission, Child remained in the care of Mother and Father. *Id.* at 52-53. However, on July 14, 2015, a CYF caseworker visited the family's home, and discovered that "there was a possible medical situation for mom, which left [Child] not in the care of mom or dad." *Id.* at 53. CYF obtained an emergency custody authorization, and placed Child in the care of Mother's cousin. *Id.*; CYF Exhibit 2 (dependency orders). On July 17, 2015, the trial court entered a shelter care order granting CYF permission to return Child to Father, who was now living separately from Mother in the home of Child's paternal grandmother. N.T., 7/7/17, at 53-54; CYF Exhibit 2. Father "stayed through the weekend," and then left the paternal grandmother's home. N.T., 7/7/17, at 54. CYF obtained another emergency custody authorization on July 27, 2015, and placed Child in the care of the paternal grandmother. *Id.*; CYF Exhibit 2. The court adjudicated Child dependent on August 18, 2015.[3] CYF Exhibit 2.

Following Child's adjudication of dependency, Father failed to comply with his family plan goals. Father attended only five of thirty-one requested drug screens. N.T., 7/7/17, at 14. Although he received treatment at a

---

[3] Child remained with paternal grandmother until March 2017 when CYF placed him in his current, pre-adoptive foster home. CYF Exhibit 1 (psychological evaluations).

drug and alcohol rehabilitation center, he later tested positive for controlled substances. *Id.* at 15, 74-75.

Father failed to maintain consistent contact with CYF, failed to complete a parenting program, and failed to obtain stable housing, in part due to periods of incarceration. *Id.* at 71-74, 75, 84-86. He also failed to maintain consistent contact with Child. Father had one documented visit with Child during all of 2016.[4] *Id.* at 73-74. On February 28, 2017, the trial court entered an Order finding aggravated circumstances due to Father's failure to maintain substantial and continuing contact with Child for a period of six months, and relieved CYF of its obligation to provide reunification efforts. CYF Exhibit 2.

On March 31, 2017, CYF filed a petition to terminate Father's parental rights to Child involuntarily. The trial court conducted a termination hearing on July 7, 2017. Following the hearing, the court entered an Order terminating Father's parental rights. Father timely filed a Notice of Appeal on July 26, 2017, along with a concise statement of errors complained of on appeal.[5]

_____

[4] Because Child was living with his paternal grandmother in 2016, it is possible that Father had additional visits of which CYF was not aware. N.T., 7/7/17, at 84-85.

[5] Father's counsel filed a docketing statement in this Court on August 8, 2017. In the docketing statement, counsel failed to indicate that she filed a concise statement of errors complained of on appeal. As a result, this Court issued a *per curiam* order on August 10, 2017, directing counsel to file a
*(Footnote Continued Next Page)*

**ISSUE ON APPEAL**

Father now raises the following issue for our review: "Did the trial court abuse its discretion and/or err as a matter of law in concluding that []CYF met its burden of proving by clear and convincing evidence that termination of [Father's] parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. §[]2511(b)[?]" Father's Brief at 8.

**LEGAL ANALYSIS**

We review Father's issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

_____
(Footnote Continued)

concise statement by August 21, 2017. Counsel filed her previous concise statement for a second time on August 15, 2017.

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, governs the termination of parental rights, and requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

>(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

>(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

>**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

On appeal, Father concedes that "there is a basis in the record to support the finding of the trial judge that grounds for termination under [Section 2511(a)](1), (2), (5), and (8) were proven by sufficient evidence." Because he makes no effort to challenge the trial court's findings with respect to Section 2511(a), we need only consider whether the court abused its discretion by terminating his parental rights pursuant to Section 2511(b). The requisite analysis is as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Father contends that continued contact between him and Child "may best serve" Child's needs and welfare, and that the only way to ensure this contact is to preserve his parental rights. Father's Brief at 13. Father argues that the "bonds that exist between Father and [C]hild are evident[,]" and further asserts that terminating his parental rights will eliminate "any chance Father may have for forming a strong bond and loving relationship between himself and the child." *Id.* at 10, 13.

In its opinion, the trial court found that CYF presented clear and convincing evidence that terminating Father's parental rights would best serve Child's needs and welfare. Trial Court Opinion, dated 8/30/17, at 22. The court reasoned that Child does not have a meaningful or beneficial relationship with Father, and that Father has made no progress toward having Child returned to his care. *Id.* The court further reasoned that Child is bonded to his pre-adoptive foster parents, who provide Child with the permanency he requires. *Id.* Our review of the record supports the trial court's findings.

At the termination hearing, psychologist Neil Rosenblum, Ph.D., testified that over the period from December 2016 to May 2017, he conducted a series of evaluations at the request of CYF, including an interactional evaluation of Child and Father, and of Child and his pre-

adoptive foster parents. N.T., 7/7/17, at 20; CYF Exh. 1.[6] Based on these evaluations, Dr. Rosenblum testified that Child is "in the process of forming a very comfortable relationship and attachment to his foster parents[.]" N.T., at 33. Child is very happy and secure in his interaction with his foster parents, and refers to them as "mommy and daddy." *Id.* at 33, 36. ***See also*** Psychological Evaluations of Neil Rosenblum, Ph.D., CYF Exh. 1.

In contrast, Dr. Rosenblum testified that Child did not display any significant degree of attachment to Father. N.T., at 33. Child appeared to recognize Father, and Father made a positive and appropriate effort to interact with him. *Id.* However, Child attempted to return to his foster parents in the waiting room on three separate occasions during the evaluation. *Id.*; CYF Exhibit 1.

Dr. Rosenblum further testified that Father lacks the stability necessary to care for Child. N.T., at 30. He emphasized Father's lengthy history of addiction and criminal activity, and his high level of dependency on other people. *Id.* at 29-31. Dr. Rosenblum summarized his conclusions as follows.

> Well, [Child] is now two years of age. He has been in care for the majority of his life and initially with paternal grandmother and then subsequently now more recently with [his foster parents].

---

[6] CYF rescheduled two of Father's scheduled evaluations with Dr. Rosenblum after Father failed to appear. CYF Exh. 1.

I believe there's a reason why he has attached so strongly to foster parents. He's at a period where he is eager for stability and someone [whom he] can connect with in order to feel safe in the world and move on in [his] development.

And I would say that both birth parents, particularly [M]other, show potential, but unfortunately, they have struggled during the two years that [Child] has been in care, close to the two years that [Child] has been in care, and based on his need for stability, my recommendation to the Court is that a goal of adoption fits within his needs and welfare at this time.

*Id.* at 36.

Thus, the record confirms that terminating Father's parental rights will best serve Child's needs and welfare. Child is developing a strong bond to his pre-adoptive foster parents, and already refers to them as "mommy and daddy." Child has no bond with Father, and it is clear that ending their relationship will not cause Child to suffer any detriment. Father is in no position to care for Child due to his chronic instability, and adoption will allow Child to obtain the benefits of a permanent and loving home.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child. Therefore, we affirm the court's July 7, 2017 order.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/26/2017

- 10 -