J-S02031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | No. 2594 EDA 2018 |

Appeal from the Decree Entered August 3, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000088-2018,
CP-51-DP-0001265-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: S.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | No. 2595 EDA 2018 |

Appeal from the Decree Entered August 3, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000089-2018,
CP-51-DP-0002751-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: I.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | No. 2597 EDA 2018 |

Appeal from the Decree Entered August 3, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000091-2018,
CP-51-DP-0002752-2015

BEFORE:  GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:          **FILED FEBRUARY 21, 2019**

Appellant, D.W. ("Father"), appeals from the decrees entered in the

Philadelphia County Court of Common Pleas Family Court, which granted the

petitions of the Department of Human Services ("DHS") for involuntary

termination of Father's parental rights to his minor children, J.W., S.W., and I.W. ("Children") and changed their permanency goals to adoption. We affirm.

In its opinion, the Family Court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no need to restate them.[1] Procedurally we add, Father timely filed notices of appeal and contemporaneous statements of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i) on Tuesday, September 4, 2018 (September 2, 2018, was a Sunday, and Monday, September 3, 2018, was Labor Day).[2] On September 17, 2018, this Court consolidated Father's appeals *sua sponte*.

Father raises three issues for our review:

> WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING THAT [DHS] PROVED BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN…CHILDREN'S BEST INTEREST TO GRANT THE DHS PETITION TO CHANGE THE GOAL TO ADOPTION[?]
>
> WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY GRANTING THE DHS PETITION TO TERMINATE FATHER'S PARENTAL RIGHTS BECAUSE IT FAILED TO CONSIDER THE [SECTIONS] 2511(A)(1)[, (A)](2) EVIDENCE IN THE "TOTALITY OF THE CIRCUMSTANCES"[?]

---

[1] The record makes clear the court appointed separate legal counsel for Children in addition to the Guardian *ad Litem*. Both counsel articulated and concurred at the hearing that termination served Children's legal and best interests.

[2] The certified record resolves any question as to whether Father filed notices of appeal at each docket number. ***See Commonwealth v. Walker***, ____ Pa. ____, 185 A.3d 969 (Pa. 2018) (requiring separate notices of appeal from orders which resolve issues arising on separate docket numbers).

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING THAT DHS PROVED BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE "BEST INTERESTS" OF...CHILDREN TO BE ADOPTED[?]

(Father's Brief at 3).

In his first and third issues combined, Father argues the trial court violated Father's due process rights, when the court prevented Father from testifying and cross-examining witnesses regarding whether adoption was in Children's best interest. Father concludes this Court should reverse the decrees and remand. We cannot agree.

As a prefatory matter, "issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Additionally, issues not raised in a Rule 1925 concise statement of errors will be deemed waived. *Lineberger v. Wyeth*, 894 A.2d 141 (Pa.Super. 2006). *See also In re L.M.*, 923 A.2d 505 (Pa.Super. 2007) (applying Rule 1925 waiver standards in family law context). "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*." *Commonwealth v. Hill*, 609 Pa. 410, 428, 16 A.3d 484, 494 (2011). The Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Id.*

Here, Father failed to raise before the trial court any violation of his due process rights. On appeal, however, Father couches his arguments regarding the goal change and part of his argument regarding termination as due process claims. Specifically, Father claims the court prevented him from testifying and cross-examining witnesses. Father did not raise his due process challenge at the termination/goal change hearing. Further, Father's concise statement reads as follows:

> 1. The trial court erred and/or abused its discretion by finding that [DHS] proved by clear and convincing evidence that it was in [Children]'s best interests to grant its petitions to change the goal to adoption because Father was a viable reunification resource and was bonded to…[C]hildren.
>
> 2. The trial court erred and/or abused its discretion by granting the DHS petition to terminate Father's parental rights because it failed to consider the [Section] 2511(a)(1), (2), (5), (8) evidence in the "totality of the circumstances."
>
> 3. The trial court erred and/or abused its discretion by finding that DHS proved by clear and convincing evidence that it was in the "best interests" of [Children] to be adopted without taking into consideration the "totality of the circumstances."

(**See** Concise Statement, filed September 4, 2018; Father's Brief at Exhibit B.) Thus, Father failed to preserve his due process complaints. Therefore, Father's first and third issues are waived in their entirety. To the extent Father frames his second issue as a due process claim, that issue is also waived for purposes of appeal. **See** Pa.R.A.P. 302(a); **Lineberger, supra**.

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Children on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his...conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his...parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa.

718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond."

*Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

- 10 -

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations and quotation marks omitted).

"[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the Honorable Daine Grey, Jr., we conclude Father's second issue merits no relief. The Family Court opinion comprehensively discusses and properly disposes of the question presented. (*See* Family Court Opinion, filed October 25, 2018, at 4-10) (finding: record indicates Father demonstrated settled purpose of relinquishing parental claim to Children and failed to perform parental duties for at least six months before DHS filed termination petitions; at termination hearing, Father testified that for over six years before termination hearing he was aware of DHS' involvement with Children, knew single case plan ("SCP") objectives were in

- 11 -

place, and knew completion of SCP objectives was vital to reunification with Children; nonetheless, Father failed to comply with court's orders, take any assessments ordered, and attend supervised visits with Children; after July 2016, Father did not visit Children for over two years; Father only visited Children again five months after DHS filed termination petitions; additionally, case worker testified that although she spoke to Father several times, he failed to perform tasks to meet SCP objectives; Father's failure to complete SCP objectives demonstrated his lack of interest in caring for Children; Father offered no evidence to show he had made any effort to re-establish ties with Children during six-month period before DHS filed termination petitions; termination of Father's parental rights to Children under Section 2511(a)(1) was warranted; regarding termination pursuant to Section 2511(a)(2), Father failed to cooperate with social services, including completing dual diagnosis assessments, anger management classes, and housing clearances; Father's failure consistently to visit Children established his indifference to Children; Father's failure to comply with SCP objectives left Children without essential parental care, which Father refused to remedy; record supports termination of Father's parental rights under Section 2511(a)(2); under Section 2511(b), record demonstrated Children would not suffer irreparable harm if court terminated Father's parental rights; compelling testimony established Children are not bonded with Father, but Children are bonded with pre-adoptive parents, to whom Children look for their needs and parental

guidance; case worker testified J.W. did not want to see Father again and I.W. did not understand concept of father; Father failed to offer evidence establishing existence of parent-child bond; in determining termination best serves needs and welfare of Children, court considered that Father has not met Children's emotional, physical, and developmental needs, or provided Children with healthy, safe environment for more than twenty-two months prior to termination hearing). The record supports both the court's rationale and its decision. Accordingly, we affirm based on the Family Court opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/19

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
JUVENILE DIVISION

| | | |
|---|---|---|
| IN RE: S.W., I.W., and J.W. | : | SUPERIOR COURT |
| | : | 2597 EDA 2018 |
| | : | 2594 EDA 2018 |
| | : | 2595 EDA 2018 |
| | : | |
| | : | COURT OF COMMON PLEAS |
| | : | CP-51-AP-0000088-2018 |
| | : | CP-51-DP-0001265-2012 |
| | : | CP-51-AP-0000089-2018 |
| | : | CP-51-DP-0002751-2015 |
| | : | CP-51-AP-0000091-2018 |
| | : | CP-51-DP-0002752-2015 |
| | : | FID: 51-FN-002075-2012 |
| APPEAL OF: D.W., Father | : | |
| | : | |

**OPINION**

DAINE GREY JR., J.                                          DATE: October 25, 2018

D.W. ("Father") timely appeals this Court's decrees entered on August 3, 2018, granting the Department of Human Services' ("DHS") petitions to involuntarily terminate his parental rights to his three children, I.W., born March ‾ 2014, J.W., born October ‾, 2010, and S.W., born May ‾ 2015, (collectively, the "Children") pursuant to the Adoption Act, 23 Pa. C.S.A. §§ 2511(a)(1), (2), and (b).

I.    **PROCEDURAL HISTORY & FACTS**

The relevant facts and procedural history of this case are as follows: DHS first became aware of this family in September 2015 when it received a report from one of the children not

1

listed in this case, R.W., stating that she wished to go back into foster care and making allegations that Mother was leaving the children home and not caring for them. (N.T. 10/29/15 at 5). The report was determined to be valid, and based on the allegations in the report, DHS subsequently filed dependency petitions for the Children and an adjudicatory hearing was held on October 29, 2015. At the adjudicatory hearing, the Court adjudicated the Children dependent based on Mother's present inability, granted full legal custody of the Children to DHS and placed the Children with their maternal grandfather. (Trial Court Order 10/29/15 at 1).

On January 31, 2018, DHS filed petitions to involuntarily terminate Father's parental rights to the Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (b) and to change the Children's permanency goals to adoption. Mother signed voluntary relinquishment of the children on March 27, 2018. This Court conducted a combined termination and Permanency hearing (collectively the "Permanency" hearing) on May 03, 2018. At the Permanency hearing, the voluntary relinquishment was found to have been made by mother in an unaltered state of mind, with the knowledge and information about what she was doing and the rights she was relinquishing. This Court accepted the voluntary relinquishments, as they had matured and it was found to be in the best interest of the children. (N.T. 05/03/2018).

The next hearing was scheduled for a goal change hearing for Father to involuntarily terminate his parental rights. At the Termination Hearing, the Community Umbrella Agency ("CUA") worker Ms. Walden testified that Father's single case plan objectives were as follows: 1) to comply with the court and CUA's recommendations, 2) participate in and complete drug and alcohol treatment, 3) participate in random drug screens, 4) complete a dual-diagnosis assessment, 5) Anger Management classes, 6) complete a parenting class, and 7) to allow DHS and CUA access to assess his home, and 8) attend supervised visits with the Children. (N.T.

2

08/03/18 at 29-30). Father's single case plan objectives have been consistent throughout the life of the case, with the exception of additional objectives at the last meeting which were simply to sign consents so that the Children could receive medical treatment. (*Id.* at 48-49). Father was told what the objectives were on numerous occasions and was informed that he needed to complete them in order to be reunified with his children, or the goal would be changed to adoption. (*Id.* at 26).

With regards to Father's compliance with his objectives, Ms. Walden testified that Father was consistently non-compliant, other than a single visit since the last court date. (*Id.* at 32-34). Specifically, with regards to the drug and alcohol component, Ms. Walden testified that Father never completed a drug and alcohol program and Father never participated in random drug screens at the Clinical Evaluation Unit ("CEU"). With respect to Father's mental health status, he never engaged in or completed a mental health program or completed the dual diagnosis assessment that was ordered by this Court.

When asked about Father's visitation with the Children, Ms. Walden testified that Father visited regularly at one point with the children for a span of six weeks dating from 5/25/16 until 7/6/2016. (*Id.* at 30). However, Father did not visit with the children six months prior to January 31, 2018. Since the TPR hearing in May 2018, Father has been offered supervised visits with the Children and only attended 1 of those visits. (*Id.* at 31). Ms. Walden also testified that there were no requests made by Father to have any more supervised visits, and they would have been offered if interest had been shown. (*Id.* at 31-32). When Ms. Walden questioned Father about why he was not showing up to visits, he stated that he did not have time to reach out to see about his children's well-being. (*Id.* at 55).

At the termination hearing, Father testified that he knew about the case from 2012 when the first of the children was taken into DHS custody. (*Id*. at 64). When questioned about whether he knew what his single case plan objectives were, Father stated that he was aware of them and was able to recite some of them to this Court (*Id*. at 67). Father testified that he never completed a parenting class, failed to complete the dual diagnostic assessment, and failed to complete any anger management classes. (*Id*. at 69-72).

Based on the foregoing testimony, this Court issued a decree involuntarily terminating the parental rights of Father under 23 Pa.C.S.A. §§ 2511(a)(1) and (2), and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of the Children. (Trial Court Order 08/03/18 at 1). Father, along with counsel, filed a timely Notice of Appeal along with a Statement of Errors.

## II.    DISCUSSION

### A. This Court Properly Granted Petitioner's Petition to Involuntarily Terminate the Parental Rights of Father Pursuant to Sections 2511(a)(1), (2), and (b)

When considering an appeal from an order involuntarily terminating parental rights, an appellate court must accept as true the trial court's findings of facts so long as they are supported by the record, and then determine whether the trial court made an error of law or abused its discretion in rendering its decision. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill-will. *Id*. An abuse of discretion will not result merely because the reviewing court might have reached a different decision. *In re R.J.T.*, 608 Pa. 9 A.3d 1179, 1190 (2010).

4

The party seeking termination must establish, by clear and convincing evidence, the existence of grounds for termination. *In re J.L.C.*, 837, A.2d 1247, 1251 (Pa. Super. 2003). Clear and convincing evidence is evidence that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

The termination of parental rights is governed by 23 Pa.C.S.A. § 2511, which requires a two-step analysis. In the first step, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the 11 grounds set forth in Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). If the court determines that the petitioner has proven at least one of the provisions of Section 2511(a), only then does it proceed to the second step. *Id.* In the second step, the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interest of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of S.P.*, 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect that permanently severing any such bond will have on the child. *In re L.M.*, 923 A.2d at 511. Additionally, in order to affirm, an appellate court need only agree with the trial court as to any one subsection of 2511(a), as well as 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

Instantly, this Court found that grounds for involuntary termination of Father's parental rights existed pursuant to 2511(a)(1), (2), and (b). (*See* Trial Court Order 8/3/18 at 1). This Court will address each subsection separately.

5

## 1. **This Court Properly Terminated Father's Parental Rights Pursuant to Section 2511(a)(1)**

Pursuant to Section 2511(a)(1), Pennsylvania law provides that the rights of a parent may be involuntarily terminated after a petition has been filed if "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

Under these specific facts and circumstances, this Court found clear and convincing evidence that Father demonstrated a settled purpose of relinquishing parental claim to the Children and failed to perform any parental duties for at least six months preceding the filing of the termination petitions on January 31, 2018. Father, according to his own testimony, was made aware of DHS involvement more than 6 years prior to the termination hearing, was aware of the single case plan objectives that were set for him, and was aware that completing these objectives were vital to him reunifying with his children. Having all of this knowledge, Father refused to comply with any of this Court's orders, has not taken any of the assessments that have been ordered, and has even refused to attend the supervised visits that were set up for him. Father attended visits from May 2016 until July of that year, and did not complete a single visit for almost two years. Father's refusal to parent since that time was demonstrated by his failure to comply with his single case plan objectives. According to the testimony of the CUA social worker, Father made outreach to her and she had spoken with him over the telephone on numerous occasions, yet Father never availed himself to perform any of the tasks necessary to meet the objectives. The completion, or even beginning the process to complete, any of the objectives that were on the Single Case Plan would have demonstrated Father's interest in caring

6

for his children; however, Father made no efforts to fulfill these objectives, other than one supervised visit since the Permanency hearing. Additionally, Father offered no evidence that he made even the slightest efforts to re-establish ties with his children during the six-month period prior to the filing of the termination petitions. It is noted that Father made visits with the children in 2016 and did not complete another visit for 2 years, until 5 months after the termination petitions were filed by DHS. Accordingly, this Court found termination of Father's parental rights warranted pursuant to 2511(a)(1).

## 2. This Court Properly Terminated Father's Parental Rights Pursuant to Section 2511(a)(2)

When terminating parental rights pursuant to Section 2511(a)(2), the moving party must prove by clear and convincing evidence, "[t]he repeated and continued incapacity, neglect, abuse or refusal of the parent has caused the child to be without parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S.A. § 2511(a)(2). Additionally, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct, but may also include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). In *In re Adoption of M.E.P.*, Westmoreland County Children's Bureau took custody of the child, citing the mother's inability to care for her child due to the mother's mental handicap. 825 A.2d at 1268. Following adjudication of the child, the mother was ordered to apply for welfare programs, obtain housing, and receive counseling in order to promote her independence and parenting skills. *Id.* at 1269. It was reported that the mother did not attempt to obtain welfare or housing and refused counseling. *Id.* As a result, the

7

trial court terminated the mother's parental rights approximately two years after the child was removed from the home. *Id.* at 1270. The Superior Court found that the mother's inability to develop parenting skills, along with her refusal to fulfill her objectives, would leave the child without proper parental care; thus, termination of the mother's parental rights was warranted under Section 2511(a)(2). *Id.* at 1273.

Applying *M.E.P.* and the elements set forth under 2511(a)(2) to the instant case, it is clear that DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Father failed to demonstrate any level of concern for reunifying with his children. Father failed to cooperate with the services provided by CUA, including dual diagnosis assessments, anger management classes, and housing clearances. (N.T. 8/3/18 at 69-70). In fact, when the CUA worker was asked about whether or not Father had passed clearances, she informed this court that Father had not passed clearances (*Id.* at 54). Moreover, the evidence established that "neglect" existed given that Father did not consistently visit the Children. He had consistent visitation with them for 6 weeks in 2016, then did not visit them at all until June of 2018. He knew they were in care that entire time, yet refused to avail himself for visitations with the Children or take any of the assessments or classes that were ordered for him by this Court. This Court found that Father's failure to fully comply with his objectives throughout the life of the case has left the Children without essential parental care, and the cause of such neglect, refusal and continued incapacity is refused to be remedied by Father. Based on the foregoing, this Court found that clear and convincing evidence existed to justify the termination of Father's parental rights pursuant to Section 2511(a)(2).

**B. This Court Properly Ruled that it Would be in the Children's Best Interest to Terminate the Parental Rights of Mother Pursuant to Section 2511(b)**

Having found that the statutory grounds for termination have been satisfied pursuant to 2511(a), this Court further found that termination of Father's parental rights serves the best interest of the Children pursuant to 2511(b).[1]

Under Section 2511(b), the party seeking termination must prove by clear and convincing evidence that termination is in the best interest of the child. *In re Bowman*, 647 A.2d 217, 218 (Pa. Super. 1994). In determining the best interest of the child, courts must consider both the needs and welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008). Intangibles such as love, comfort, security and stability are also considered when making a determination. *Id.* (*citing In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006)). Furthermore, the parent-child relationship is examined in order to determine what effect the potential termination would have on the child. *See K.Z.S.*, 946 A.2d at 760. Typically, when examining the nature of the parent-child relationship, courts must consider whether there is a natural bond between the parent and child, and if termination of parental rights would sever "an existing, necessary, and beneficial relationship." *Id.* In cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *Id.* at 762-63.

In the instant matter, this Court determined that the Children would not suffer irreparable emotional harm if Father's parental rights were terminated. There was compelling testimony offered at the TPR hearing that the Children are not bonded with Father, and are furthermore bonded with their pre-adoptive parents who they look to in order to meet their needs and parental

---

[1] *See In re L.M.*, 923 A.2d 505, 511(Pa. Super. 2007) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)").

9

duties. (N.T. 8/3/18 at 37-43). Specifically, the CUA worker testified that J.W. did not want to see Father again (*Id.* at 38), while I.W. did not even know what a father was. (*Id.* at 43). Father failed to offer any evidence establishing the existence of a parent-child bond, other than stating that he wanted his Children. The testimony demonstrated that the Children's primary bond is with their foster. This Court believes that we are nowhere closer to reunification now than we were when this case first came in in September 2015. Additionally, in determining that termination would best serve the needs and welfare of the Children, this Court considered that Father has not been able to meet the Children's emotional, physical, and developmental needs, or provide the Children with a healthy, safe environment for more than 22 months prior to the TPR hearing. For the foregoing reasons, this Court properly granted DHS's petition to involuntarily terminate the parental rights of Father pursuant to Section 2511(b).

## III. CONCLUSION

Accordingly, this Court respectfully requests that the instant appeal be denied.

BY THE COURT:

10